## BROOKLYN SAVINGS BANK v. O'NEIL.

NO. 445.

Argued February 5, 6, 1945.—Decided April 9, 1945.

*Messrs. Homer Cummings* and *Sedgwick Snedeker,* with whom *Messrs. Joseph V. Lane, Jr.* and *Carl McFarland* were on the brief, for petitioner in No. 445; *Mr. Hyman Ginsberg,* with whom *Mr. Harry Leeward Katz* was on the brief, for petitioner in No. 554; *Mr. Robert R. Bruce,* with whom *Messrs. Kenneth C. Newman* and *John J. Boyle* were on the brief, for petitioners in No. 421.

*Mr. Max R. Simon* for respondent in No. 445; *Mr. Paul Berman,* with whom *Messrs. Eugene A. Alexander, III,* and *Theodore B. Berman* were on the brief, for respondent in No. 554; *Mr. Aaron Benenson,* with whom *Mr. James L. Goldwater* was on the brief, for respondent in No. 421.

*Solicitor General Fahy, Messrs. Robert L. Stern, Douglas B. Maggs, George M. Szabad, Albert A. Spiegel* and *Miss Bessie Margolin* filed a brief in Nos. 445 and 554, and with *Mr. Jerome H. Simonds* a brief in No. 421, on behalf of the Administrator of the Wage and Hour Division, U. S. Department of Labor, as *amicus curiae.*

MR. JUSTICE REED delivered the opinion of the Court.

The writs of certiorari granted in these three cases present questions as to the interpretation of Section 16 (b) of the Fair Labor Standards Act of 1938, 52 Stat. 1060, at 1069, which provides that an employer who violates the

minimum wage and maximum hour provisions of the Act " . . . shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. . . ."[1]  Cases No. 445 and No. 554 raise the question whether an employee subject to the terms of the Act can waive or release his right to receive from his employer liquidated damages under § 16 (b).  Case No. 421 presents the issue of whether in a suit brought pursuant to the provisions of § 16 (b) the employee is entitled to interest on sums recovered as wages and liquidated damages under that section.  Since these three cases involve similar problems relating to the interpretation of § 16 (b) and the Congressional policy behind its adoption, all three cases will be dealt with in one opinion.  See also No. 462, *post*, p. 720.

## No. 445.

The petitioner, Brooklyn Savings Bank, owned and operated an eleven-story office building in which the respondent was employed as a night watchman during a two-year period from November 5, 1938, to August 30, 1940.  Since a substantial portion of that building was

---

[1] Section 16 (b) provides:

"Any employer who violates the provisions of section 6 or section 7 of this Act shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.  Action to recover such liability may be maintained in any court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated, or such employee or employees may designate an agent or representative to maintain such action for and in behalf of all employees similarly situated.  The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."

devoted to the production of goods for commerce,[2] the respondent was entitled to overtime compensation under the provisions of § 7 of the Fair Labor Standards Act.[3] 52 Stat. 1063. No such compensation was paid at that time. However, in November, 1942, over two years after the respondent had left petitioner's service, the petitioner computed the statutory overtime compensation due the respondent and offered him a check for $423.16 in return for a release of all of his rights under the Act. The respondent signed the release and took the check. Since this sum did not include any payment for liquidated damages provided for in § 16 (b) of the Act, the respondent subsequently instituted the present proceeding in a New York City Municipal Court to recover liquidated damages due him under § 16 (b). The complaint was dismissed on the grounds that respondent failed to prove a cause of action and also that the respondent "released any claim for liquidated damages or counsel fees." The Appellate Term reversed, per curiam, holding that respondent was employed in the production of goods for commerce within

---

[2] The New York Appellate Term held that the Fair Labor Standards Act applied to the petitioner's operation of its building. This holding was affirmed by the Appellate Division and the Court of Appeals. See notes 5 and 6. Petitioner did not raise this issue in his petition for certiorari.

[3] Section 7 (a) provides:

"No employer shall, except as otherwise provided in this section, employ any of his employees who is engaged in commerce or in the production of goods for commerce—

(1) for a workweek longer than forty-four hours during the first year from the effective date of this section,

(2) for a workweek longer than forty-two hours during the second year from such date, or

(3) for a workweek longer than forty hours after the expiration of the second year from such date,.

unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

the meaning of the Fair Labor Standards Act and was entitled therefore to recover liquidated damages by reason of petitioner's default in making overtime payments as required by § 7 of the Act.[4]  This decision was affirmed by the New York Appellate Division,[5] and by the New York Court of Appeals.[6]  Since the New York Court of Appeals decided a federal question of substance not heretofore determined by this Court, we granted certiorari [7] limited to the question of whether the respondent's release of all claims and damages under the Act, given at the time he received payment of the overtime compensation due under the Act, is a defense to an action subsequently brought solely to recover liquidated damages.  The jurisdiction of this Court rests on § 237 (b) of the Judicial Code.

## No. 554.

The petitioner in this second case operated a box factory in which he employed the respondent during the period from October, 1938, the effective date of the Fair Labor Standards Act, to November, 1942, when respondent was discharged.  During this period the respondent worked hours in excess of the statutory maximums in effect during this period.  Petitioner failed to pay respondent time and one-half for overtime as required by the Act.  In September, 1942, the Wage and Hour Administration procured an injunction, by consent, prohibiting the petitioner from violating the Act.  In November, 1942, the petitioner tendered the respondent $500 for wages due and owing under the Act, the latter accepting the money and signing a

---

[4] *O'Neil* v. *Brooklyn Savings Bank,* 180 Misc. 542, 43 N. Y. S. 2d 25.

[5] *O'Neil* v. *Brooklyn Savings Bank,* 267 App. Div. 317, 46 N. Y. S. 2d 631.

[6] Affirmed without opinion, 293 N. Y. 666, 56 N. E. 2d 259.

[7] 323 U. S. 698.

general release of all claims against petitioner under the Act. Both parties knew at this time that more than $500 was due to respondent for minimum wages and overtime pay under the Act. Shortly thereafter, the respondent engaged counsel to recover the balance due him under the Act. Petitioner, before suit was filed, tendered the balance of the statutory wages due, but respondent refused to accept it because it did not include an equal sum for liquidated damages. Thereupon the respondent brought suit for $276.05, the balance of the statutory wages due respondent, and $776.05, being liquidated damages equal to the whole amount ($500 plus $276.05) which had originally been unlawfully withheld. In his answer, the petitioner pleaded settlement of respondent's claim for $500, the release given by respondent pursuant to such settlement, and the petitioner's subsequent tender of a check for the deficiency in statutory minimum and overtime wages due. The District Court granted judgment for the respondent relying on *Guess* v. *Montague,* 140 F. 2d 500, which held invalid a settlement agreement on the part of employees to accept less than the statutory minimum wage.[8] The Circuit Court of Appeals for the Fourth Circuit affirmed.[9]

Because the decision of the Circuit Court of Appeals decided an important question of federal law which has not been, but should be, settled by this Court, we granted certiorari[10] limited to the question of whether there had been a compromise of respondent's claim. Jurisdiction of this Court rests on § 240 (a) of the Judicial Code.

The petition in No. 445 raises the question of whether an employee, accepting from his employer a delayed pay-

---

[8] *Maddrix* v. *Dize,* 7 Wage Hour Rep. 313 (Jan. 31, 1944, not officially reported).

[9] *Dize* v. *Maddrix,* 144 F. 2d 584.

[10] 323 U. S. 702.

ment of the basic statutory wages due under the Act, can validly release and waive any further right to recover liquidated damages under the provisions of § 16 (b).[11] A preliminary question arises as to whether respondent's release was given in settlement of a bona fide dispute between the parties with respect to coverage or amount due under the Act or whether it constituted a mere waiver of his right to liquidated damages. The state courts made no findings of fact on this issue. Where a state court fails to pass on evidence or make findings of fact because under their respective views the facts referred to are immaterial, we are not relieved from the duty of examining the evidence for the purpose of determining what facts reasonably might be and presumably would be found therefrom by the state court. *Merchants' National Bank* v. *Richmond,* 256 U. S. 635, 638; *Carlson* v. *Curtiss,* 234 U. S. 103, 105. Cf. *United Gas Co.* v. *Texas,* 303 U. S. 123, 143; *Creswill* v. *Knights of Pythias,* 225 U. S. 246, 261. We think the record in this case shows that the release was not given in settlement of a bona fide dispute between employer and employee. Petitioner undertook to pay the respondent after our decision in *Kirschbaum Co.* v. *Walling,* 316 U. S. 517, which determined the applicability of the Fair Labor Standards Act to building operators like the petitioner. Petitioner's answer in the Municipal Court merely relied upon payment of the statutory liability and the release of other claims. With the exception of the recital in the release, there is nothing in the record which shows that the respondent's release was obtained as the result of the settlement of a bona fide dispute between the parties with respect to coverage or amount.[12] Moreover, the decision by the New York Appellate Division was based on *Rigopoulos*

---

[11] See note 1 *supra.*

[12] The respondent, employee, was informed by a third person some two years after he left the petitioner's employment that petitioner had some money for him. Respondent went to petitioner's offices. According to respondent's testimony, there was no discussion or dispute prior

v. *Kervan,* 140 F. 2d 506, which involved waiver of right to liquidated damages in the absence of a bona fide dispute and which expressly reserved decision on the question of validity of a settlement where there was such a dispute between the parties. The issue presented in No. 445 therefore is whether in the absence of a bona fide dispute between the parties as to liability, respondent's written waiver of his right to liquidated damages under § 16 (b) bars a subsequent action to recover liquidated damages. We are of the opinion that it does not bar such claim.[13]

It has been held in this and other courts that a statutory right conferred on a private party, but affecting the public interest, may not be waived or released if such waiver or release contravenes the statutory policy. *Midstate Horticultural Co.* v. *Pennsylvania R. Co.,* 320 U. S. 356, 361; *Phillips* v. *Grand Trunk R. Co.,* 236 U. S. 662, 667. Cf. *Young* v. *Higbee Co.,* 324 U. S. 204, 212. Where a private right is granted in the public interest to effectuate a legislative policy, waiver of a right so charged or colored with the public interest will not be allowed where it would thwart the legislative policy which it was designed to effectuate.[14] With respect to private rights

---

to his acceptance of the check given him by the petitioner either as to the existence of liability under the Act or as to the amount of such liability. Viewed most favorably petitioner's witness' testimony was merely to the effect that the petitioner had subjective doubts as to the existence and amount of its liability.

[13] For a general discussion of the problem raised by this case, see Herman, The Administration and Enforcement of the Fair Labor Standards Act, 6 Law and Contemp. Probs. 368; Tepper, Consent Judgments and Contempt Cases under the Fair Labor Standards Act of 1938, 22 Boston Univ. L. Rev. 390; Determination of Wages under Fair Labor Standards Act, 43 Col. L. Rev. 355; 57 Harv. L. Rev. 257.

[14] See *United States* v. *Morley Construction Co.,* 98 F. 2d 781, 788; *Labor Board* v. *American Potash & Chemical Corp.,* 113 F. 2d 232, 118 F. 2d 630; *Labor Board* v. *Stackpole Carbon Co.,* 128 F. 2d 188, 190; *Waterman S. S. Corp.* v. *Labor Board,* 119 F. 2d 760; *Perry* v.

created by a federal statute, such as § 16 (b), the question of whether the statutory right may be waived depends upon the intention of Congress as manifested in the particular statute. As was stated in *Midstate Horticultural Co.* v. *Pennsylvania R. Co.*, 320 U. S. 356, 360, ". . . whether the policy of . . . [the] legislation contemplates the one result or the other . . . is the controlling question."

Neither the statutory language, the legislative reports [15] nor the debates [16] indicates that the question at issue was

*W. L. Huffman Automobile Co.*, 104 Neb. 211, 175 N. W. 1021, reversed on rehearing, 104 Neb. 214, 179 N. W. 501; *Harrington* v. *Dept. of Labor & Industry*, 252 Mich. 87, 233 N. W. 361.

[15] The provisions of § 16 (b) appeared for the first time in the bill reported by a Conference Committee of both Houses. The Committee report simply stated, H. Rep. No. 2738, 75th Cong., 3d Sess., p. 33:

"Section 16 of the conference agreement provides a fine of not more than $10,000, or imprisonment for not more than 6 months, or both, for violations of the act. No person is to be imprisoned upon conviction for a first offense. This section also provides for civil reparations for violations of the wages and hours provisions. If an employee is employed for less than the legal minimum wage, or if he is employed in excess of the specified hours without receiving the prescribed payment for overtime, he may recover from his employer twice the amount by which the compensation he should have received exceeds that which he actually received."

There were three legislative reports on predecessor bills but these bills did not contain any provision analogous to § 16 (b). S. Rep. No. 884, 75th Cong., 1st Sess.; H. Rep. No. 1452, 75th Cong., 1st Sess.; H. Rep. No. 2182, 75th Cong., 3d Sess.

[16] As indicated in note 15, *supra*, § 16 (b) was first incorporated into the Fair Labor Standards Act of 1938 in the bill reported out of the Conference Committee of both Houses. The debates in both Houses prior to adoption of the Conference report were quite brief, 83 Cong. Rec. 9158–78, 9246–67. The only reference to § 16 (b) was by Representative Keller who stated, 83 Cong. Rec. p. 9264:

"Among the provisions for the enforcement of the act an old principle has been adopted and will be applied to new uses. If there shall

specifically considered and resolved by Congress. In the absence of evidence of specific Congressional intent, it becomes necessary to resort to a broader consideration of the legislative policy behind this provision as evidenced by its legislative history and the provisions in and structure of the Act. See *Tennessee Coal Co.* v. *Muscoda Local,* 321 U. S. 590, 597; *United States* v. *Darby,* 312 U. S. 100, 117–18, 122–23. Such consideration clearly shows that Congress did not intend that an employee should be allowed to waive his right to liquidated damages.

The legislative history of the Fair Labor Standards Act shows an intent on the part of Congress to protect certain groups of the population from sub-standard wages and excessive hours which endangered the national health and well-being and the free flow of goods in interstate commerce.[17] The statute was a recognition of the fact that due to the unequal bargaining power as between employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts on their part which endangered national health and efficiency and as a result the free movement of goods in inter-

---

occur violations of either the wages or hours, the employees can themselves, or by designated agent or representatives, maintain an action in any court to recover the wages due them and in such a case the court shall allow liquidated damages in addition to the wages due equal to such deficient payment and shall also allow a reasonable attorney's fees and assess the court costs against the violator of the law so that employees will not suffer the burden of an expensive lawsuit. The provision has the further virtue of minimizing the cost of enforcement by the Government. It is both a common-sense and economical method of regulation. The bill has other penalties for violations and other judicial remedies, but the provision which I have mentioned puts directly into the hands of the employees who are affected by violation the means and ability to assert and enforce their own rights, thus avoiding the assumption by Government of the sole responsibility to enforce the act."

[17] H. Rep. No. 2738, 75th Cong., 3d Sess., pp. 1, 13, 21 and 28.

state commerce.[18] To accomplish this purpose standards of minimum wages and maximum hours were provided. Neither petitioner nor respondent suggests that the right to the basic statutory minimum wage could be waived by any employee subject to the Act. No one can doubt but that to allow waiver of statutory wages by agreement would nullify the purposes of the Act. We are of the opinion that the same policy considerations which forbid waiver of basic minimum and overtime wages under the Act also prohibit waiver of the employee's right to liquidated damages.

We have previously held that the liquidated damage provision is not penal in its nature but constitutes compensation for the retention of a workman's pay which might result in damages too obscure and difficult of proof for estimate other than by liquidated damages. *Overnight Motor Co.* v. *Missel*, 316 U. S. 572. It constitutes a Congressional recognition that failure to pay the statutory minimum on time may be so detrimental to maintenance of the minimum standard of living "necessary for health, efficiency and general well-being of workers" [19] and to the free flow of commerce, that double payment must be made in the event of delay in order to insure restoration of the worker to that minimum standard of well-being.[20] Em-

---

[18] The legislative debates indicate that the prime purpose of the legislation was to aid the unprotected, unorganized and lowest paid of the nation's working population; that is, those employees who lacked sufficient bargaining power to secure for themselves a minimum subsistence wage. 81 Cong. Rec. 7652, 7672, 7885; 82 Cong. Rec. 1386, 1395, 1491, 1505, 1507; 83 Cong. Rec. 7283, 7298, 9260, 9265. See also H. Rep. No. 1452, 75th Cong., 1st Sess., p. 9; S. Rep. No. 884, 75th Cong., 1st Sess., pp. 3–4.

[19] § 2 (a), 52 Stat. 1060.

[20] The necessity of prompt payment to workers of wages has long been recognized by Congress as well as by state legislatures. Numerous statutory provisions have been adopted to insure prompt payment. See for example, 33 U. S. C. § 914 (e) and (f); 46 U. S. C.

ployees receiving less than the statutory minimum are not likely to have sufficient resources to maintain their well-being and efficiency until such sums are paid at a future date. The same policy which forbids waiver of the statutory minimum as necessary to the free flow of commerce requires that reparations to restore damage done by such failure to pay on time must be made to accomplish Congressional purposes. Moreover, the same policy which forbids employee waiver of the minimum statutory rate because of inequality of bargaining power, prohibits these same employees from bargaining with their employer in determining whether so little damage was suffered that waiver of liquidated damage is called for. This conclusion is in accord with decisions of the majority of the federal courts that have considered this question.[21] This result,

---

§ 596; Wis. Rev. Stat. 1941, § 103.39; N. Y. Labor Law, c. 31, § 196; Calif. Labor Code, 1937, §§ 204, 205, 219.

As to the importance to the worker of receiving prompt payment, see Labor Laws and their Administration, 1936 Bull. No. 629, U. S. Dept. of Labor, Bureau of Labor Statistics, p. 139.

[21] *Fleming* v. *Post*, 146 F. 2d 441; *Seneca Coal & Coke Co.* v. *Lofton*, 136 F. 2d 359; *Rigopoulos* v. *Kervan*, 140 F. 2d 506; *Birbalas* v. *Cuneo Printing Industries*, 140 F. 2d 826; *Travis* v. *Ray*, 41 F. Supp. 6; *Hutchinson* v. *William C. Barry, Inc.*, 44 F. Supp. 829. Contra: *Guess* v. *Montague*, 140 F. 2d 500.

There has been less unanimity over the right to compromise claims under the statute in cases involving a bona fide dispute. See *Atlantic Co.* v. *Broughton*, 146 F. 2d 480; *Fleming* v. *Post, supra; Fleming* v. *Warshawsky & Co.*, 123 F. 2d 622; *Donahue* v. *Susquehanna Collieries Co.*, 138 F. 2d 3; *Rigopoulos* v. *Kervan, supra; David* v. *Atlantic Co.*, 69 Ga. App. 643, 26 S. E. 2d 650. For discussion of the release and settlement problem as it has arisen under the state Workmen's Compensation Acts, see Dodd, Administration of Workmen's Compensation, 186 *et seq.*

For lower federal court decisions holding that rights to unpaid minimum wages and overtime compensation constitute a single right, see *Fleming* v. *Post, supra; Birbalas* v. *Cuneo Printing Industries, supra.* Cf. *Buckley* v. *Oceanic S. S. Co.*, 5 F. 2d 545.

moreover, avoids the difficult problems of allocation that would arise in numerous cases where a lump sum was paid for back wages and waiver of right to liquidated damages and where issue was subsequently raised as to whether there had been full payment of the basic minimum and overtime wages specified in the Act. Nor does the instant case involve exceptional circumstances of the kind held to justify a waiver agreement such as was upheld in *Fort Smith & Western R. Co.* v. *Mills,* 253 U. S. 206.

The private-public character of this right is further borne out by an examination of the enforcement provisions of the Act. Although the difficulties of enforcement under the Act were recognized,[22] the Administrator was given limited enforcement powers. Criminal prosecution was available only for willful violations—difficult to prove. § 16 (a). The Administrator's civil remedy lay by way of suit for an injunction, which by its nature tends to be prospective in operation. No power was vested in the Administrator to bring an action at law to obtain payment of minimum wages left unpaid and to recover damages arising from delay in payment. Sole right to bring such suit was vested in the employee under § 16 (b). Although this right to sue is compensatory, it is nevertheless an enforcement provision.[23] And not the least effective aspect of this remedy is the possibility that an employer who gambles on evading the Act will be liable for payment not only of the basic minimum originally due but also damages equal to the sum left unpaid. To permit an employer to secure a release from the worker

---

[22] See statement by Secretary of Labor, Joint Hearings, Committee on Education and Labor, United States Senate, and Committee on Labor of House of Representatives, 75th Cong., 1st Sess., on S. 2475 and H. R. 7200, Part 1, p. 181. See also note 16, *supra.*

[23] Joint Hearings, *op. cit., supra,* note 22, Part 2, p. 457. See also note 16, *supra.*

**710**

who needs his wages promptly will tend to nullify the deterrent effect which Congress plainly intended that § 16 (b) should have. Knowledge on the part of the employer that he cannot escape liability for liquidated damages by taking advantage of the needs of his employees tends to insure compliance in the first place. To allow contracts for waiver of liquidated damages approximates situations where courts have uniformly held that contracts tending to encourage violation of laws are void as contrary to public policy.[24]

Prohibition of waiver of claims for liquidated damages accords with the Congressional policy of uniformity in the application of the provisions of the Act to all employers subject thereto, unless expressly exempted by the provisions of the Act. An employer is not to be allowed to gain a competitive advantage by reason of the fact that his employees are more willing to waive claims for liquidated damages than are those of his competitor.[25] The same considerations calling for equality of treatment which we found so compelling in *Midstate Horticultural Co., supra,* exist here.

The provisions of the statute reflect the policy considerations discussed above which prohibit waiver of the right to liquidated damages. Sections 7 (a) and 16 (b) are mandatory in form. In terms they direct that the

[24] See *Sage* v. *Hampe,* 235 U. S. 99, 105; *Smith* v. *McCullough,* 270 U. S. 456, 465; *Muschany* v. *United States,* 324 U. S. 49, 64.

[25] H. Rep. No. 2182, 75th Cong., 3d Sess., pp. 6–7, states: "There are to be no differentials either between sections of the United States, between industries, or between employers. No employer in any part of the United States in any industry affecting interstate commerce need fear that he will be required by law to observe wage and hour standards higher than those applicable to his competitors. No employee in any part of the United States in any industry affecting interstate commerce need fear that the fair labor standards maintained by his employer will be jeopardized by oppressive labor standards maintained by those with whom his employer competes."

employer shall not employ a worker longer than the specified time without payment of overtime compensation and that, upon violation of this provision, the employer shall be liable for statutory wages and liquidated damages. One section, § 16 (b), creates the obligation for the entire remedy. Collection of both wages and damages is left to the employee.[26]

Respondent argues that § 16 (b) indicates that the right to liquidated damages arises only if the employee is compelled to sue for minimum wages due. Section 16 (b) in no way bears out this interpretation.[27] It provides absolutely that the employer shall be liable for liquidated damages in an amount equal to minimum wages overdue; liability is not conditioned on default at the time suit is begun. It is also argued that the elimination from a predecessor bill of a provision prohibiting waiver of the provisions of the Act indicates a Congressional intent to allow an employee to waive his claim to liquidated damages.[28]

---

[26] § 16, 52 Stat. 1069.

[27] See note 1, *supra.*

[28] Section 20 (a) and (b) of the original bills introduced into the House and Senate provided as follows:

"Sec. 20. (a) Any contract, agreement, or understanding for the employment of any person in violation of any provision of this Act or of a regulation or order thereunder shall be null and void.

"(b) Any contract, agreement, understanding, condition, stipulation, or provision binding any person to waive compliance with any provision of this Act or with any regulation or order thereunder shall be null and void."

S. 2475, 75th Cong., 1st Sess., introduced May 24, 1937; H. R. 7200, 75th Cong., 1st Sess., introduced May 24, 1937.

Except for renumbering of the section and one slight change in language, this provision remained in the bill and its various amendments, apparently until it was eliminated by the Conference Committee. Section 17, S. 2475, Calendar No. 905 (Report No. 884), 75th Cong., 1st Sess., reported with an amendment, July 6, 1937; § 17, S. 2475, Union Calendar No. 535 (Report No. 1452), 75th Cong., 1st Sess., reported with amendment, Aug. 6, 1937; § 16, S. 2475, 75th

But such a contention proves too much. It applies with equal force to the right to minimum wages. Such an interpretation would nullify the effectiveness of the Act. It is also suggested that the failure to impose criminal sanctions for the violation of the liquidated damage provisions or to authorize an injunction to prevent their violation manifests a difference in Congress' attitude toward the waiver of the employee's right to the basic statutory wage as compared with his right to liquidated damages. But there is no reason for making an employer subject to a criminal penalty or an injunction for failure to pay liquidated damages. They are collectible as private damages by the employee for failure to obey the same requirements as to wages which are punished and controlled, so far as the purely public interest is concerned, by criminal sanctions and injunction.

Petitioner relies on the fact that various other federal statutes authorizing employees to sue for wages or for damages arising from injuries sustained in the course of employment contain specific provisions prohibiting waiver of rights under the acts involved, or provide means by which compromises and settlements can be approved.[29]

Cong., 2d Sess., amended and recommitted, Dec. 17, 1937. The reason for eliminating this provision from the final bill does not appear. It was done in the course of the general revision of the bill in the Conference Committee.

[29] The following federal statutes contain express provisions relating to the waiver or settlement of claims under them: Longshoremen's and Harbor Workers' Comp. Act, 33 U. S. C. §§ 908 (i), 915 (b), 916; Federal Employers' Liability Act, 45 U. S. C. § 55; Jones Act, 46 U. S. C. § 688; settlement of wage claims of merchant seamen, 46 U. S. C. §§ 597, 644. The federal courts have interpreted these provisions strictly so as to protect the employee. *Garrett* v. *Moore-McCormack Co.*, 317 U. S. 239; *Duncan* v. *Thompson*, 315 U. S. 1; *Pacific Mail S. S. Co.* v. *Lucas*, 258 U. S. 266; *Arrow Stevedore Co.* v. *Pillsbury*, 88 F. 2d 446; *Pacific Employers Ins. Co.* v. *Pillsbury*, 130 F. 2d 21; *Henderson* v. *Glens Falls Indemnity Co.*, 134 F. 2d 320; *Westenrider* v. *United States*, 134 F. 2d 772.

There is no indication why Congress did not embody a similar provision in the Act under consideration in this case. Absence of such provisions, however, has not prevented the courts from invalidating waivers where the legislative policy would be thwarted by permitting such contracts.[30] The decision in the instant case is based on the legislative policy behind this enactment and issues arising under other acts having different legislative backgrounds are not conclusive in determining the legislative intent with respect to the Fair Labor Standards Act. Failure to provide a method of waiving claims under the Act can support contrary inferences, that such waivers were to be allowed or that the provisions of the Act state a settled policy which cannot be modified by private contracts. We are of the opinion that the legislative history and provisions of the Act support a view prohibiting such waiver. As was stated in *West Coast Hotel Co.* v. *Parrish,* 300 U. S. 379, 397, " 'while in individual cases hardship may result, the restriction will enure to the benefit of the general class of employees in whose interest the law is passed and so to that of the community at large.' [*Adkins* v. *Children's Hospital,* 261 U. S. 525.] *Id.,* p. 563."

The invalidity of the release or waiver in No. 445 makes the release and waiver involved in No. 554 *a fortiori* invalid. In the latter case both the federal District Court [31] and the Circuit Court of Appeals [32] found "that both parties knew more than $500.00 was due . . ." at the time the petitioner tendered $500 to the respondent in return for a comprehensive release covering all of the respondent's claims against the petitioner employer. Thus in that case the employer and employee attempted by means of that release to waive the right to the basic statutory minimum as well as the right to liquidated damages. This

---

[30] See note 14, *supra.*

[31] 7 Wage Hour Rep. 313.

[32] 144 F. 2d 584, 585.

attempted release and waiver of rights under the Act was absolutely void. See *Smith* v. *McCullough,* 270 U. S. 456, 465. When petitioner attempted to pay the additional sum due as a statutory minimum, the respondent refused to accept payment, thus there was no valid settlement which would operate to bar the respondent employee's right to recover the balance of the statutory minimum wage still due and liquidated damages equal in amount to the entire sum of wages which the employer had not paid promptly.

Our decision of the issues raised in No. 445 and No. 554 has not necessitated a determination of what limitation, if any, § 16 (b) of the Act places on the validity of agreements between an employer and employee to settle claims arising under the Act if the settlement is made as the result of a bona fide dispute between the two parties, in consideration of a bona fide compromise and settlement. Neither of the above-mentioned cases presented such issues for our consideration. Cf. *Duncan* v. *Thompson,* 315 U. S. 1, 7; *Garrett* v. *Moore-McCormack Co.,* 317 U. S. 239; *Tennessee Coal Co.* v. *Muscoda Local,* 321 U. S. 590, 603.

There remains to be considered the question whether an employee recovering minimum wages and liquidated damages under the provisions of § 16 (b) is also entitled to interest on the sums so recovered.[33] We granted certiorari in No. 421 [34] to the Circuit Court of Appeals for

---

[33] In No. 445 the New York Appellate Term allowed interest on unpaid liquidated damages. *O'Neil* v. *Brooklyn Savings Bank,* 180 Misc. 542, 43 N. Y. S. 2d 25. This was affirmed on subsequent appeals to higher state courts. See notes 5 and 6 *supra.* Since petitioner in No. 445 did not seek certiorari on this issue, we have not examined it. *Connecticut Ry. Co.* v. *Palmer,* 305 U. S. 493, 495.

The federal District Court and Circuit Court of Appeals in No. 554 did not award the employee in that case interest on sums adjudged due as unpaid overtime wages and liquidated damages.

[34] 323 U. S. 698.

the Second Circuit, limited to the question of the propriety of allowing interest on recoveries of unpaid overtime compensation and liquidated damages under the Act. Certiorari was granted because that court decided an important federal question of substance which had not previously been determined by this Court. The jurisdiction of this Court in No. 421 rests on § 240 (a) of the Judicial Code.

We are of the opinion that the question of the right to interest on sums recoverable under the provisions of § 16 (b) of the Act constitutes a question of federal, not local, law. *Board of Commissioners* v. *United States,* 308 U. S. 343, 349–50; see *Prudence Corp.* v. *Geist,* 316 U. S. 89, 95; *Garrett* v. *Moore-McCormack Co.,* 317 U. S. 239. Interest is not recoverable in judgments obtained under § 16 (b). As was indicated in our decision in *Overnight Motor Co.* v. *Missel, supra,* § 16 (b) authorizes the recovery of liquidated damages as compensation for delay in payment of sums due under the Act. Since Congress has seen fit to fix the sums recoverable for delay, it is inconsistent with Congressional intent to grant recovery of interest on such sums in view of the fact that interest is customarily allowed as compensation for delay in payment. To allow an employee to recover the basic statutory wage and liquidated damages, with interest, would have the effect of giving an employee double compensation for damages arising from delay in the payment of the basic minimum wages. See *Royal Indemnity Co.* v. *United States,* 313 U. S. 289, 296. Allowance of interest on minimum wages and liquidated damages recoverable under § 16 (b) tends to produce the undesirable result of allowing interest on interest. See *Cherokee Nation* v. *United States,* 270 U. S. 476, 490. Congress by enumerating the sums recoverable

in an action under § 16 (b) meant to preclude recovery of interest on minimum wages and liquidated damages.[35]

The judgments in No. 445 and No. 554 are hereby affirmed. The judgment in No. 421 is reversed in so far as it included interest.

Mr. Chief Justice Stone, dissenting in No. 445 and concurring in No. 554.

Mr. Justice Roberts, Mr. Justice Frankfurter and I think the judgment should be reversed in *Brooklyn Savings Bank* v. *O'Neil*, No. 445, and affirmed in *Dize* v. *Maddrix*, No. 554.

### No. 445.

Respondent was employed by petitioner in New York, and in New York gave to petitioner, without consideration, a purported written release of its obligation to pay the statutory liquidated damages prescribed by § 16 (b) of the Fair Labor Standards Act. Section 243 of the Debtor and Creditor Law of New York declares a written instrument purporting to release "all claims, debts, demands or obligations . . . shall not be invalid because of the absence of consideration or of a seal." Counsel are agreed that, unless the words or policy of the Fair Labor Standards Act preclude, the written release was as effective to discharge the obligation for liquidated damages as was the release under seal at common law.

We find nothing in the Fair Labor Standards Act to prevent the effective operation of such a release upon the cause of action for liquidated damages more than any other. Section 16 (b) of the Act authorizes the employee to recover liquidated damages from an employer who violates the duty imposed by §§ 6 and 7 of the Act to pay the prescribed minimum and overtime wages. That duty is expressed in §§ 6 and 7 in terms of a command to the

---

[35] See note 1, *supra.*

employer. Willful failure to obey it is made a criminal offense by §§ 15 (a) (2) and 16 (a), and authority to enjoin violations of §§ 6 and 7 is given by §§ 15 and 17.

These provisions and these alone afford some basis for inferring a Congressional policy against the release of minimum and overtime wages. But the Act places the right to recover liquidated damages authorized by § 16 (b) on a very different footing. That section expresses no command. It merely imposes a civil liability on the employer and gives an action to the employee to enforce the liability. Failure by the employer to pay the prescribed liquidated damages is not made a criminal offense by §§ 15 and 16 and may not be enjoined under §§ 15 and 17.

The studious avoidance of any provision making the non-payment of the liquidated damages a public wrong, by the omissions of sanctions which the statute does impose for the failure to pay minimum and overtime wages, is the most persuasive kind of evidence that it was the Congressional purpose to leave undisturbed the general policy of the law that a mere private claim for damages may be released at the will of the claimant. It is not an answer to say that "there is no reason for making an employer subject to a criminal penalty or an injunction for failure to pay liquidated damages," since they are "collectible as private damages." It is precisely because the statute in this case has in every respect treated the claim for liquidated damages as a private claim while imposing sanctions, as for a public wrong, for non-payment of minimum and overtime wages, that we must infer that Congress intended that the claim for liquidated damages should have the status of private claims, which are subject to release, a status which the statute denied to minimum and overtime wages.

This pointed difference in the treatment of the two classes of claims is underscored by the complete lack of

any legislative history suggesting that there was any Congressional purpose to treat alike the two classes of claims which it treated so differently in the statute. In its progress through Congress there was stricken from the bill, which was finally enacted as the Fair Labor Standards Act, a clause providing that any agreement for waiver of compliance with any provision of the Act should be void. Section 17 (b), S. 2475, as passed by Senate, 75th Cong., 1st Sess., 1937. With this provision eliminated, the mandatory terms of §§ 6 and 7, the criminal penalties of the Act, and its provision for relief in equity, afford the sole ground to be found either within or without the statute for any inference of a Congressional policy against the release of claims arising under the Act. These factors concern only the minimum and overtime wages. They neither support nor suggest any Congressional policy against release of liquidated damages to which they are inapplicable and wholly unrelated.

If such an undeclared policy is to be inferred, it must be inferred from the statute, read in its appropriate setting. The statute is silent as to any exceptional policy with respect to claims for unliquidated damages—a silence which is given meaning by the provisions affirmatively making non-payment of minimum and overtime wages a public wrong. Any inference that a release of minimum and overtime wages is invalid must be because the release is an aggravation of the public wrong. But to draw that inference is to foreclose the possibility of a like inference with respect to liquidated damages, the non-payment of which is not made a public wrong.

We held in *Overnight Motor Co.* v. *Missel,* 316 U. S. 572, that the provision for liquidated damages is not punitive. Hence it cannot in itself be said either to have created or sanctioned a public right or interest in the recovery of liquidated damages. In view of the uncer-

tain coverage of the Act we cannot ignore the fact that the statutory liability may be harsh in its application and enable the employee to recover an amount far in excess of any damage which he has in fact suffered. All these considerations persuasively suggest that Congress has adopted no policy which precludes the employee from releasing, as in the case of other claims, the claim for liquidated damages when the release conforms to local law and is procured without overreaching or unfairness.

On the contrary the provisions of the Act show, and the legislative history emphasizes, that Congress intended to treat the liquidated damage obligation differently from its command to pay minimum and overtime wages. Because of this difference we cannot say that it intended to place the employee so far in tutelage as not to be free to give, and the employer to obtain, a release of what is by the terms of the statute nothing more than a cause of action for damages which in fact he may or may not have suffered.

## No. 554.

There appears to have been no accord and satisfaction in this case, and for the reasons stated in our opinion in *Brooklyn Savings Bank* v. *O'Neil,* No. 445, the attempted release by respondent of his claim for overtime wages was void as against the policy of the Fair Labor Standards Act. Because of petitioner's failure to pay overtime wages as directed by § 7 of the Act, respondent is entitled to recover liquidated damages as provided by § 16 (b), and the judgment should be affirmed.