## SIMONARSON v. McMURCHIE.

### No. 5823–A.

United States District Court. D. Alaska.
First Division. Juneau.

Sept. 10, 1948.

William L. Paul, Jr., of Juneau, for plaintiff.

Joseph A. McLean and Howard D. Stabler, both of Juneau, for defendant.

FOLTA, District Judge.

Plaintiff seeks to recover the reasonable value of personal services performed by him as a logger for 72 days straight time at the prevailing wage of $1.48 and 13 days overtime at time and a half, and by his assignor Janet Woodring, as cook, for 710 hours at the statutory minimum of $18 for a work week of 48 hours and for 224 hours overtime at time and a half.

An agreement, Defendant's Exhibit C, reciting that plaintiff, defendant, A. Zumboldt and David Woodring had associated themselves in a joint adventure for the purpose of engaging in logging in the name of the Echo Logging Company, was executed on January 14, 1946, at Juneau, by all except the plaintiff (who was then in camp), and left at Juneau presumably for safekeeping. Plaintiff had no opportunity to examine the agreement until two or three months later when he refused to sign it on the ground that the terms were unfair. Defendant, however, asserts that plaintiff's refusal to sign was due to the fact that in the meantime he had discovered that the venture was unprofitable. Upon plaintiff's refusal to sign the agreement defendant fixed plaintiff's wages at $8 a day, including board and lodging. In April when Zumboldt withdrew from the venture and an accounting was had, as of April 10th, the statement prepared and given him by the defendant contained the item of $472 for wages due plaintiff for 59 days work from January 24th to April 2, 1946.

Janet Woodring was employed as cook at $80 a month. Defendant testified that her salary was fixed at that amount after he and his associates had concluded that they could not afford to pay more. Janet Woodring testified that being inexperienced it was necessary to work at least ten hours a day, except Sundays, to discharge her duties as cook not only because of the limited equipment and facilities in a temporary camp of that character and the extra work necessitated by a severe winter, but also because she had to wash dishes,

fetch water and wood and dry out the wood before it could be burned, and do the bookkeeping. Defendant answered, alleging payment to Janet Woodring of the sum of $200 for the two and one-half months of the first venture, and admitting that plaintiff had earned $472 but further alleging that plaintiff owed him $158 on the counterclaim set forth in the answer.

Defendant testified that plaintiff and the members of the first venture were so inefficient and unskilled in logging that he notified them on March 29, 1946, that operations had to be discontinued. On April 4, 1946, an agreement identical in terms was entered into between the defendant, David Woodring, Leo Lind and Reinhold Aho. Like the first, this agreement expressly provided that the enterprise was to be supervised and managed by defendant. When Lind and Aho arrived at the camp on April 11th and a discussion ensued as to future operations, plaintiff and his witnesses testified that in response to a question as to what part he and Janet Woodring would play in the second venture, Lind and Aho assured them that they were to continue as before. Defendant, however, was not present. Moreover, he testified that the services of both had been dispensed with upon the termination of the first venture on April 2nd. Notwithstanding, plaintiff and Janet Woodring resumed their services, and accordingly their claims cover the period of the second venture also, from April 11 to May 6, 1946. During all this time the defendant managed and supervised the camp and logging operations and worked as a logger. He testified that during this latter period the plaintiff did nothing but got in the way of the others and that he tolerated plaintiff's presence and allowed him to board at the camp at the expense of the members, from charitable motive only; that, since Janet Woodring's husband was a member of the second venture also, and she had no other place to stay, he likewise allowed her to remain at the camp and receive her meals without cost to her. It is asserted that the second venture also resulted in a loss but, although defendant sub-

mitted records of cost, no documentary proof of earnings was submitted in substantiation of this assertion.

Plaintiff has been paid nothing for his services. Defendant, however, paid Janet Woodring $25.00 on December 17, 1946, and a few days later offered her a check for $175, Defendant's Exhibit A, with the comment that $200 was pretty good pay for two and one-half months work, namely January 24th to April 2nd. Typed on the check was an endorsement, reciting that the check was in full settlement of her claims against the Echo Logging Company. Janet Woodring accepted the check and cashed it because she testified she and her husband, who had derived no profit from either venture, were destitute. It is clear that this was not intended to be in settlement of her claim for work performed during the life of the second venture.

On December 26, 1947, this action was commenced under the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq. Upon the trial the complaint was amended to state a cause of action in quantum meruit for wages due plaintiff at the prevailing rate of $1.48 an hour straight time for the entire period, January 24th to May 6, 1946, and time and a half for overtime. Asserting that the contract made with Janet Woodring was void under Chapter 80, S.L.A. 1939, prohibiting the employment of women for more than 48 hours a week at a rate of less than $18, plaintiff further amended his complaint to state a cause of action for the recovery of the statutory minimum of $18 for each 48-hour week, with time and a half for overtime, worked by Janet Woodring.

Upon the conclusion of the case defendant moved for a nonsuit on the grounds: (1) That there is a fatal variance between the allegation that plaintiff and his assignor were employed by the defendant and the proof that the obligation to pay for their services was a joint liability of all the members; (2) that there is a like variance between the allegation of the performance of services of the reason-

able worth of $18 a week for a work week of 48 hours and proof of an express contract to pay $80 a month; and (3) that the acceptance of the check, Defendant's Exhibit A, bearing the endorsement described, constitutes an accord and satisfaction. Since, however, the objection of non-joinder was not pleaded, it follows that it was waived under Section 3420, C.L.A. 1933, Baker & Hamilton v. Lambert, 5 Cal.App. 708, 91 P. 340, particularly in view of the fact that the defendant sets forth a counterclaim in his answer arising out of individual transactions with the plaintiff.

 Chapter 80, S.L.A.1939, so far as pertinent to this case, provides that:

Sec. 2. "No person, firm, association or corporation shall employ any female person over the age of eighteen years at a weekly wage rate of less than $18.00 for a six day week of 48 hours."

Sec. 7. "Any person, firm, association or corporation violating any provision of this Act, upon conviction thereof, shall be fined not more than Two Hundred Fifty Dollars or imprisoned not more than six months."

There was no express stipulation in the contract as to the hours to be worked and, since the statute does not prohibit the employment of women for more than 48 hours a week, it is manifest that the asserted illegality must rest on the mere failure of defendant to pay for the services rendered at a rate not less than $18 for a work week of 48 hours. Can it be said that a contract, not illegal as to hours, becomes illegal merely because the employer has failed to pay for the hours worked at a rate not less than the statutory minimum of $18 for a work week of 48 hours? Obviously not. It is simply a case of nonpayment of wages. Accordingly, it follows that there is a fatal variance between the allegations of the second cause of action, predicated on a quantum meruit theory, and the proof of an express contract. During the trial plaintiff amended his complaint, so far as his second cause of action is concerned, to set forth a claim in quantum

meruit on the theory that the contract for the employment of Janet Woodring became illegal by reason of its performance —failure to pay for the hours worked in excess of the statutory work week of 48 hours. Since it appears that the defendant will not be prejudiced and that it will be in the furtherance of justice, the Court will allow the plaintiff to amend his complaint to conform to the proof, and deny the motion for nonsuit as to the second cause of action.

█ The remaining question as to this cause of action is whether the acceptance of the check for $175, Defendant's Exhibit A, delivered to Janet Woodring more than seven months after her employment terminated, when she and her husband were destitute, constitutes an accord and satisfaction. A review of the evidence surrounding this incident clearly shows that it falls far short of establishing such a defense to her claim for services performed for the second joint adventure. Cf. Brooklyn Sav. Bank v. O'Neill, 324 U.S. 697, 714, 65 S.Ct. 895, 89 L.Ed. 1296.

██ Although it is declared in the preamble to the Act that its purpose is to protect women workers from the effects of inadequate wages and the Act prescribes minimum wages, it is silent on the question of pay for overtime. In the absence of any applicable statutory provision or agreement, it is my opinion that overtime should be paid for at not less than the rate prescribed for straight time, and in view of the defendant's previous relations with the plaintiff, involving logging and other work over a period of several years, I find that it was not intended to pay plaintiff for overtime at time and a half. I further find that the plaintiff has sustained the burden of proof as to both causes of action and is entitled to pay for 85 days at $8 for services performed by him, less $100 which I find to be due from plaintiff to defendant under Paragraph 2 of his counterclaim. I also find that plaintiff as assignee is entitled to pay at the rate of $18 for each work week of 48 hours and to 37½¢ an hour for overtime, less $200 already paid his assignor. $350 is allowed as attorney fees.