PAN AMERICAN WORLD AIRWAYS, INC., Petitioner, v. SUPERIOR COURT OF PUERTO RICO, SAN JUAN PART, ALFONSO R. GARCÍA MARTÍNEZ, JUDGE, Respondent; ELADIO MARRERO ET AL., Interveners.

No. O-71-166.        Decided February 23, 1972.

*Hartzell, Fernández, Novas & Ydrach* for petitioner. *Elí Beléndez García, José A. Suro, Antonio José Amadeo,* and *Ernesto Rodríguez Font* for interveners.

PER CURIAM: Invoking the provisions of Act No. 379 of May 15, 1948, 29 L.P.R.A. § 271 *et seq.*, which governs the working day and of Act No. 96 of June 26, 1956, 29 L.P.R.A. (Supp. 1961) § 245 *et seq.*, on minimum wages, several of its employees filed a complaint against Pan American World Airways, Inc., claiming compensation at double rate for (1) hours worked in excess of 8 hours within periods of 24 consecutive hours; (2) hours worked in excess of 48 hours weekly, and (3) hours worked during the weekly day of rest. The claim covers the period between 1948 and 1958.

The defendant moved for summary judgment dismissing the complaint alleging that it is an air carrier engaged in interstate and foreign commerce and as such, its relations with the complainants are governed exclusively by the provisions of the Railway Labor Act, 45 U.S.C.A. § 151 *et seq.* Affidavits and copies of the collective bargaining agreements

existing between the defendant and the unions representing the complainants were attached to the petition. The said petition was denied and on reconsideration, the defendant introduced an affidavit made by its sales manager to the effect that each and every one of the complainants has been compensated in accordance with the stipulations in the collective bargaining agreements and specifically that "the wage for time worked in excess of eight hours during the workday (daily) or of forty during the workweek in none of the cases has been less than time and a half of the regular wage rate."

Even though the complainants objected to the summary judgment they never controverted the facts alleged by the defendant. The motion for reconsideration was denied.

We issued a writ of certiorari to review said proceedings and we decided, among other things, that the complainants are only entitled to time and a half pay for the extra hours, except those in excess of 12 hours daily or 48 weekly or those worked during the seventh day which, pursuant to the collective agreements, should be compensated at double rate. We said that the appropriate disposition of this appeal would be to reverse the order entered and dismiss the complaint in all its parts since from the uncontroverted evidence offered by the defendant it is inferred that they were duly compensated for overtime. "However" we add "from an examination of three of the collective agreements attached to said motion, the possibility arises that, by reason of the changes in the shifts, the plaintiffs worked in excess of eight hours during twenty-four consecutive hours or during the day of rest, which were paid to them at the regular rate. Since the proviso of § 5 provides for the payment of at least time and a half the regular rate, it is possible that a cause of action is not wholly lacking. *Ponce* v. *Fajardo Sugar Co., supra.*"

Consequently the writ issued was quashed and the case remanded to the trial court for further proceedings not incon-

sistent with our opinion. *Pan American* v. *Superior Court*, 86 P.R.R. 132 (1962).

During the further proceedings and at the request of the complainants a special master was appointed with the duty of examining all the daily attendance records during the period to which the claim refers, in order to determine whether complainants were compensated at a rate of time and a half for work performed in excess of 8 hours during the consecutive period of 24 hours, on account of the change of shifts or during their day of rest. Later on, complainants requested that the task entrusted to the special master be enlarged, so that it would include a report of extra hours worked under any circumstances whatsoever and not only on account of the changes of shift. On October 17, 1968, the trial court entered an order granting the complainants' request and determined that since the defendant's own records show, beyond any doubt, that on numerous occasions it did not pay hours worked by its employees not related with change of shift, the most proper thing would be to receive evidence about all the hours not compensated "as it appears from the allegations of the complaint filed in this case."

We agreed to review said order and we decided that this Court's order constitutes the law of the case between the parties and that all that the trial court could consider is what deals with the overtime worked by reason of the changes in shift. Consequently, we set aside the order object of review and remanded the case for further proceedings. *Pan American* v. *Superior Court*, 97 P.R.R. 435 (1969).

When the case was remanded, the parties filed in the trial court a stipulation to which annexes "A" and "B" were attached. Annex "A" lists the names of 108 of the plaintiffs who worked for the defendant during the 10 years (1948–1958) covered by the complaint. Said Annex contains, besides, the names of the 108 claimants, (1) the period of time involved, (2) the employee's classification, (3) months by

hours, (4) regular wage rate per hour, (5) simple amount to be paid and (6) the amount with penalty to be paid.

The parties agreed that all the information appearing in the aforementioned Annex "A" is correct and that the total additional compensation which the plaintiffs whose names appear in Annex "A" would be entitled to receive, would be computed as follows: (1) the mechanics would receive the additional compensation, including the penalty set forth in column marked with number 6 of Annex "A" at the rate of $1.94 per hour, and (2) maintenance workers would receive the additional compensation, including the penalty indicated under column 6 of Annex "A," at the rate of $1.40 per hour.

The parties also stipulated that as to the claimants whose names appear in Annex "B," the defendant alleges that they are not entitled to receive any additional compensation whatsoever inasmuch as they received all the compensation to which they were entitled in accordance with law and the collective agreements and the parties have not been able to reach an agreement with respect to these facts, it being, therefore, necessary to hold a hearing to settle said controversy.

In the stipulation they prayed the court to issue an order:

A) Approving the agreement and the stipulations of the parties with respect to the plaintiffs listed in the Annex "A."

B) Any other proper pronouncement made or ordered by the court with respect to the plaintiffs listed in Annex "B."

On October 19, 1970, plaintiffs' attorneys filed a motion requesting judgment with respect to the claimants whose names appear in Annex "A", with interest on the additional compensation to be paid each claimant, at the rate of 6% annually from the date of the filing of the complaint (1958). Subsequently, they requested that attorney's fees be fixed.

The Secretary of Labor appeared by motion giving her consent to the approval of the stipulation filed by the parties

and praying that judgment be rendered in favor of the complainants in the amounts appearing in Annex "A."

On December 16, 1970, the trial court rendered judgment ordering the defendant to pay to the plaintiffs appearing in Annex "A" the amounts therein set forth plus interest on the same at the rate of 6% annually from the date the claim was filed to the date of payment thereof. Besides it ordered defendant to pay, for attorney's fees, 30% of the total amount which each of the plaintiffs was to receive in this case.[1]

We issued a writ to review that judgment.

In deciding the first petition for certiorari in the case of *Pan American* v. *Superior Court, supra,* we said that the applicable law was Act No. 379 of May 15, 1948, and that the only applicable provision of the Minimum Wage Act was that referring to prescription of actions. This ruling of ours constitutes the law of the case as to the statute to be applied. It was in the light of that ruling that the parties entered the stipulation referring to the 108 claimants whose names were set forth in Annex "A" mentioned so many times.

Understanding it thus, the trial court, in allowing in its judgment the interest on the sums to be paid from the filing of the complaint and until its payment, applied § 1061 of the Civil Code (31 L.P.R.A. § 3024) and not § 30 of the Minimum Wage Act.[2]

Act No. 379 of 1948 that governs this case, inasmuch as it is not a claim for less compensation than that prescribed in the Minimum Wage Act (§§ 245 to 246m of 29 L.P.R.A.) but a claim for less compensation than that set in §§ 2 to 19 of said Act No. 379, expressly provides the sums

---

[1] As alleged by the defendant in its memorandum, the interest amounts to the approximate sum of $120,000 and the sum total of attorney's fees would be about $82,000 approximately.

[2] The indicated § 30 of the Minimum Wage Act—Act No. 96 of June 26, 1956—includes for the first time, the interest besides the additional compensation when the workman or employee claims through civil action.

to be paid as liquidation of damages and which consists, as we know, in a sum equal to the amount not compensated in addition to costs, expenses, and attorney's fees. Section 13 of Act No. 379.[3] It was not provided in this act that besides the indemnity already mentioned, the employer would pay interest on the amounts owed from the filing of claim through civil action, different from what in the year 1956 the lawmaker expressly set forth in § 30 of the Minimum Wage Act, denoting that the penalty provided by the Minimum Wage acts prior to 1956 as well as by Act No. 379, because they are special laws dealing with matters concerning wages, are the ones that establish the measure of additional compensation as damages and by them we must abide and not by the general provision of § 1061 of the Civil Code which provides that should the obligation consist in the payment of a sum of money, and the debtor should be in default, the indemnity for losses and damages, should there be no stipulation to the contrary, shall consist in the payment of the interest agreed upon, and should there be no agreement, in that of the legal interest. Act No. 379 changed this measure of indemnity to a more onerous one, as is the additional compensation equal to the sum owed.[4] In doing so, it expressly determined which

---

[3] In *Pan American* v. *Superior Court*, 86 P.R.R. 132, at p. 146 we said: ". . . But as will be noted immediately, Act No. 379 neither establishes a higher minimum wage nor a shorter workday. Although it is true that the latter establishes compensation at double rate for time worked in excess of eight hours daily, we have seen that this standard is not applicable to carriers by air by virtue of the proviso of § 5. *Cf. Wage Stabilization in the Airline Industry*, 20 J. Air Law & Comm. 282 (1953). *Laborde* v. *Eastern Sugar Associates*, 81 P.R.R. 458, 473 (1959), cited by the interveners, did not involve the strict application of the standard established in the proviso of § 5, for as we have already said, the sugar industry was covered by Decree No. 3, the effectiveness of which was expressly upheld by § 22 of Act No. 379. *Caguas Bus Line* v. *Com. of Labor*, 73 P.R.R. 690 (1952)."

[4] Under the present Minimum Wage Act the measure of damages has been made even more onerous because besides including as penalty a sum equal to that owed, it has included also, the payment of the interest.

was the measure of damages and which, as we have already said, does not include the interest. See the case of *Brooklyn Savings Bank* v. *O'Neil,* 324 U.S. 697, which construes § 16 (b) of the Federal Fair Labor Standards Act of 1938, insofar as it concerns the penalty.

We conclude, therefore, that the trial court erred in ordering the defendant to pay the said interest.

The defendant also contests for considering it too excessive, the amount granted the plaintiffs for attorney's fees, which, as we have already indicated, is equal to 30% of the sums corresponding to each of the said plaintiffs.

■ The showings in the record disclose that the work performed in this case by plaintiffs' attorneys, considering the nature of the suit, the questions involved, the sums in controversy, and the time consumed by these attorneys during the lengthy duration of the case, the amount for attorney's fees should be fixed at $45,000 and in this sense the judgment of the trial court should be modified. See *Prado* v. *Quiñones,* 78 P.R.R. 300, 309 (1955).

The pronouncement of the judgment rendered by the Superior Court, San Juan Part, ordering the defendant to pay to the plaintiffs interest at the rate of 6% annually from the date of the filing of the complaint will be reversed, and it will be affirmed in its other parts and modified in the sense of fixing the amount for attorney's fees at $45,000.

Mr. Chief Justice Negrón Fernández, Mr. Justice Hernández Matos, and Mr. Justice Rigau took no part in this decision.