464 F.2d 1196
 20 Wage & Hour Cas. (BN 808, 69 Lab.Cas. P 32,738
 MAYHUE'S SUPER LIQUOR STORES, INC., et al.,
Plaintiffs-Appellants-Cross Appellees,
v.
James D. HODGSON, Secretary of Labor, United States
Department of Labor, Defendant-Appellee-Cross Appellant.
 No. 71-2044.
 United States Court of Appeals,
 Fifth Circuit.
 Aug. 2, 1972.
Rehearing Denied Sept. 5, 1972.
 
 James V. Johnstone, Miami Beach, Fla., for appellant.
 Beverley R. Worrell, Ronald Gaswirth, Atty., U. S. Dept. of Labor, Office of the Solicitor, Atlanta, Ga., Clemens Hagglund, Asst. U. S. Atty., Robert W. Rust, U. S. Atty., Miami, Fla., Carin Ann Clauss, Dept. of Labor, James D. Henry, Richard F. Schubert, Sol., U. S. Dept. of Labor, Washington, D. C., for appellees.
 Before TUTTLE, MORGAN and RONEY, Circuit Judges.
 RONEY, Circuit Judge:
 
 
 1
 An agreement that an employee will repay to his employer any shortages in money entrusted to him, when shortages occur through misappropriation, theft, or otherwise, violates the minimum wage requirements of the Fair Labor Standards Act to the extent that such required payments reduce below the minimum wage the amount of money and compensation which the employee receives. The district court held otherwise. We reverse.
 
 
 2
 Mayhue's Super Liquor Stores, Inc., a Florida corporation, owns and operates a chain of six retail liquor stores in Broward County, Florida, and is admittedly subject to the requirements of the Fair Labor Standards Act. Carl L. Mayhue, its president and sole stockholder, actively manages the affairs of the corporation, including the hiring and firing of employees and the setting of wage policies. The employees involved in this litigation are cashiers who worked for various periods of time at one or more of the six liquor stores.
 
 
 3
 This action was initiated by the corporation and Mayhue for a declaratory judgment as to the legality under the Fair Labor Standards Act of requiring employees, as a condition of employment, to sign agreements providing that the employees would make "voluntary" repayments of cash register shortages. The Secretary counterclaimed under Section 17 for an order restraining the continued withholding of unpaid minimum wages and overtime compensation resulting from two practices: (1) the voluntary repayment of shortages pursuant to the agreement, and (2) the performance of work which was required but not recorded on Mayhue's time records. He also sought an injunction against further violations on both scores.
 
 
 4
 The district court declared Mayhue's employment agreements to be valid under the Act. However, the court held that the employer had otherwise willfully violated the Act's minimum wage, overtime, and record-keeping provisions, enjoined such violations, and required restitution to certain named employees. Both parties appeal the judgment.
 
 
 5
 We reverse the judgment only with respect to the validity of that part of the employment agreement requiring repayment of cash register shortages.
 
 I.
 
 6
 The right to a minimum wage under the Fair Labor Standards Act cannot be waived by agreement between the employee and his employer. Brooklyn Bank v. O'Neil, 324 U.S. 697, 65 S.Ct. 895, 89 L.Ed. 1296 (1945).[1] The critical question in this case is whether this agreement works such a waiver. The employer concedes that the wages paid to many employees would be below the minimum if the repayments made or required were deducted from the amount of the compensation.
 
 
 7
 The controlling provision of the agreement provides:
 
 
 8
 "It is understood that the employee is responsible for any money entrusted to him. Any shortages that occur through misappropriation, theft, or otherwise, shall be voluntarily repaid by the employee to the employer. In executing this contract at the time of employment, it is understood by both parties that the employee is the sole and only person using or entering into the safe, cash deposit box, or sole operator of a cash register.
 
 
 9
 The employee agrees to voluntarily repay said missing funds to the employer within a reasonable period of time. The employer shall not deduct said shortages from the paycheck of the employee. It is understood that said shortages are considered to be a valid debt owed to the employer.
 
 
 10
 Any repaid debts caused by such shortages shall not be considered as part of the calculation of basic rates of employees and shall not be used to determine whether the employee has received pay amounting to less than the Federal minimum wage.
 
 
 11
 Basic rates, used for calculation of overtime pay, shall not be reduced as a result of repayment of such debts. Said debt repayment is, for all purposes, unconnected with payroll procedures and are not to be considered as payroll deductions."
 
 
 12
 In holding that this agreement in no way violates the provisions of the Fair Labor Standards Act, the district court said that a contrary holding
 
 
 13
 "would amount to a 'judicial invitation' to such employees to steal. Certainly the Act is not intended to prevent an employer from protecting his property, including assets in the form of cash. Such losses, however, should not be deducted from the employees pay whether wages are being paid in cash or by check. The agreement being approved by the court contemplates 'voluntary' repayment by employees. Any contrary action by the employer would, in the court's opinion, violate the provisions of the Act."
 
 
 14
 The "judicial invitation" to steal argument is not persuasive. There is no evidence that Mayhue's shortages were the result of theft on the part of the cashiers or were in any way different from the usual losses which are to be expected where cashier employees handle a large number of transactions. The agreement required repayment regardless of the reason for the shortages. If the agreement required only repayment of money that the employee himself took or misappropriated it obviously would not collide with the Act. As a matter of law the employee would owe such amounts to the employer, and as a matter of fact, the repayment of moneys taken in excess of the money paid to the employee in wages would not reduce the amount of his wages. This case is distinguishable from the situation where an employee has taken some money, has had the use of it, and is required to return it. In such a case there would be no violation of the Act because the employee has taken more than the amount of his wage and the return could in no way reduce his wage below the minimum.
 
 
 15
 The "voluntary-involuntary" dichotomy is meaningless for two reasons. First, if the intent of the parties were to make repayment purely voluntary on the part of the employee, an agreement would not be necessary. The agreement would be pointless. Yet the employer requires the execution of the agreement as a condition of employment. Second, the provision in the agreement that the "shortages are considered to be a valid debt owed to the employer" obviously controls the matter and expresses the intent of the parties. It overrides any argument that the repayments are voluntary on the part of the employee.
 
 
 16
 With the employee's financial picture burdened with the "valid debt" of the shortages, he is receiving less for his services than the wage that is paid to him. Whether he pays the "valid debt" out of his wages or other resources, his effective rate of pay is reduced by the amount of such debts. When it is reduced below the required minimum wage, the law is violated. Of particular relevance in this regard are the Regulations found in 29 CFR Sec. 531.35 which provide:
 
 
 17
 "'Free and clear' payment; 'kickbacks.' Whether in cash or in facilities, 'wages' cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or 'free and clear.' The wage requirements of the Act will not be met where the employee 'kicks-back' directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee. This is true whether the 'kick-back' is made in cash or in other than cash . . . ."
 
 
 18
 We have said that these regulations are entitled to controlling weight. Cf. Shultz v. Hinojosa, 432 F.2d 259 (5th Cir. 1970).
 
 
 19
 We agree with the Secretary that this agreement tended to shift part of the employer's business expense to the employees and was illegal to the extent that it reduced an employee's wage below the statutory minimum. This amounts to nothing more than an agreement to waive the minimum wage requirements of the Fair Labor Standards Act. Such an agreement is invalid. The case must be remanded to the district court for further proceedings in connection with all matters in which the agreement for repayment of shortages was involved.
 
 II.
 
 20
 We have carefully reviewed the record in considering the other issues raised by both parties and find sufficient evidence to support the findings of fact and conclusions of law of the district court on each. See Capitol Tomato Co. v. Goldberg, 308 F.2d 401 (5th Cir. 1962).
 
 
 21
 Affirmed in part and reversed and remanded in part.
 
 
 
 [1]
 "The legislative history of the Fair Labor Standards Act shows an intent on the part of Congress to protect certain groups of the population from substandard wages and excessive hours which endangered the national health and well-being and the free flow of goods in interstate commerce. The statute was a recognition of the fact that due to the unequal bargaining power as between employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts on their part which endangered national health and efficiency and as a result the free movement of goods in interstate commerce. To accomplish this purpose standards of minimum wages and maximum hours were provided. Neither petitioner nor respondent suggests that the right to the basic statutory minimum wage could be waived by any employee subject to the Act. No one can doubt but that to allow waiver of statutory wages by agreement would nullify the purposes of the Act." 324 U.S. at 706-707, 65 S.Ct. at 902. Following Brooklyn Bank, a number of cases have held that contractual understandings which have the effect of "circumventing or invading the command of the Wage and Hour Act" are invalid and unenforceable. Mitchell v. Turner, 286 F.2d 104 (5th Cir. 1960); Wood v. Meier, 218 F.2d 419, 420 (5th Cir. 1955); Handler v. Thrasher, 191 F.2d 120, 123 (10th Cir. 1951); Mitchell v. Greinetz, 235 F.2d 621, 625 (10th Cir. 1956); Caserta v. Home Lines Agency, Inc., 273 F.2d 943, 946 (2nd Cir. 1959)