Tyrone WALDEN and Gregory Nabel, individually and on behalf of others similarly situated, Plaintiffs,

v.

**FLORIDA DEPARTMENT OF CORRECTIONS,** Defendants.

No. TCA 95–40357–WS.

United States District Court, N.D. Florida, Tallahassee Division.

June 24, 1996.

Kelly Overstreet Johnson, Broad & Cassel, Tallahassee, FL, for Plaintiffs.

Joseph Lewis, James A. Peters, Atty. General's Office, Dept. of Legal Affairs, Tallahassee, FL, Henry Aloysius Gill, Jr., Atty. General's Office, Dept. of Legal Affairs, Tampa, FL, Deborah S. Crumbley, Thompson Sizemore & Gonzalez, Tampa, FL, for Defendant.

### ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

STAFFORD, District Judge.

As current or former employees of the Florida Department of Corrections ("FDOC"), the plaintiffs in this action seek unpaid overtime pay allegedly due them under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219. Before the court at this time is FDOC's motion to dismiss for lack of jurisdiction (doc. 100). FDOC contends that it is entitled to dismissal under the Eleventh Amendment to the United States Constitution.

### I.

The Eleventh Amendment provides that

[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced on or prose-

cuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. While the text of the amendment does not explicitly so provide, the Supreme Court has held that an unconsenting state is immune from suits brought— as this suit is brought—by its own citizens in federal court. *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). The holding of *Hans* has been reaffirmed time and time again. *Welch v. Texas Dep't of Highways and Pub. Transp.,* 483 U.S. 468, 494–497, 107 S.Ct. 2941, 2957–2958, 97 L.Ed.2d 389, 409–410 (1987) (citing cases).

■ The Eleventh Amendment serves as a jurisdictional bar to suit against a state in federal court unless: (1) the state has explicitly consented to suit, thus waiving its sovereign immunity; or (2) Congress has specifically abrogated a state's Eleventh Amendment immunity. *Seminole Tribe of Florida v. Florida,* 517 U.S. 609, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). Here, the plaintiffs have sued a state agency that is clearly the equivalent of the State of Florida for Eleventh Amendment purposes, and it is undisputed that Florida has not consented to the suit. The question that remains is whether Congress has abrogated Florida's Eleventh Amendment immunity to suit in federal court against claims brought under the FLSA.

## II.

■ When determining whether Congress has abrogated a state's sovereign immunity to suit in federal court, a court must ask two questions. First, it must ask whether Congress unequivocally expressed its intent to abrogate the state's Eleventh Amendment immunity. Second, it must ask whether Congress acted pursuant to a constitutional provision granting Congress the power to abrogate. *Seminole Tribe of Florida,* 517 U.S. at ——, 116 S.Ct. at 1123, 134 L.Ed.2d at 266 (citing *Green v. Mansour,* 474 U.S. 64, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985)).

■ In arguing for dismissal under the Eleventh Amendment, FDOC does not contend that Congress failed to unequivocally express its intent to abrogate a state's Eleventh Amendment immunity under the FLSA. Indeed, FDOC would not prevail with such an argument. *Reich v. New York,* 3 F.3d 581 (2d Cir.1993), *cert. denied,* 510 U.S. 1163, 114 S.Ct. 1187, 127 L.Ed.2d 537 (1994); *Hale v. Arizona,* 993 F.2d 1387 (9th Cir.1993) (en banc ). Instead, HRS contends that Congress failed to act pursuant to a valid exercise of power.

FDOC relies on the United States Supreme Court's recent decision in *Seminole Tribe of Florida v. Florida,* 517 U.S. at ——, 116 S.Ct. at 1114, 134 L.Ed.2d at 252. In that case, the State of Florida challenged a federal court's jurisdiction under the Indian Gaming Regulatory Act (the "Indian Gaming Act" or the "Act"). 25 U.S.C. §§ 2701–2721. Passed by Congress under the Indian Commerce Clause, U.S. Const., art. I, § 8, cl. 3, the Indian Gaming Act explicitly authorizes a tribe to bring suit in federal court against a state in order to compel the state's performance of duties under the Act. The Supreme Court held that, "notwithstanding Congress' clear intent to abrogate the States' sovereign immunity, the Indian Commerce Clause does not grant jurisdiction over a State that does not consent to be sued." *Seminole Tribe,* 517 U.S. at ——, 116 S.Ct. at 1119, 134 L.Ed.2d at 261. Absent a valid exercise of congressional power to abrogate a state's sovereign immunity, the Supreme Court determined that Florida was entitled to dismissal for lack of jurisdiction in federal court.

In *Seminole Tribe,* the Supreme Court refused to follow—in fact, it expressly overruled—its decision in *Pennsylvania v. Union Gas Co.,* 491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989), a case wherein a plurality of the Court decided that Congress had the power to abrogate a state's sovereign immunity under the Interstate Commerce Clause, which—like the Indian Commerce Clause—is found in article I, section 8 of the Constitution. U.S. Const., art. I, § 8, cl. 3. Characterizing the *Union Gas* decision as a "solitary departure from established law," 517 U.S. at ——, 116 S.Ct. at 1128, 134 L.Ed.2d at 273, the *Seminole Tribe* Court explained that Congress may not use its article I powers to circumvent the constitutional limita-

tions place upon federal jurisdiction by the Eleventh Amendment.

Consistent with the holding in *Seminole Tribe*, FDOC is entitled to dismissal *if* Congress passed the FLSA solely pursuant to the Commerce Clause. FDOC suggests that Congress did just that. This court agrees.

### III.

The plaintiffs do not deny that the FLSA was enacted pursuant to the Interstate Commerce Clause. They suggest, however, that the Interstate Commerce Clause was not the *only* basis for enactment of the FLSA. They urge the court to consider the Fourteenth Amendment as an alternative source of power.

The plaintiffs urge consideration of the Fourteenth Amendment because the Supreme Court has said that the Fourteenth Amendment—unlike the Indian and Interstate Commerce Clauses—provides a valid basis for congressional abrogation of a state's sovereign immunity. In *Seminole Tribe*, the Court explained as follows:

> In *Fitzpatrick* [*v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976)], we recognized that the Fourteenth Amendment, by expanding federal power at the expense of state autonomy, had fundamentally altered the balance of state and federal power struck by the Constitution. We noted that § 1 of the Fourteenth Amendment contained prohibitions expressly directed at the States and that § 5 of the Amendment expressly provided that "The Congress shall have the power to enforce, by appropriate legislation, the provisions of this article." We held that through the Fourteenth Amendment, federal power extended to intrude upon the province of the Eleventh Amendment and therefore that § 5 of the Fourteenth Amendment allowed Congress to abrogate the immunity from suit guaranteed by that Amendment.

*Seminole Tribe*, —— U.S. at ——, 116 S.Ct. at 1125, 134 L.Ed.2d at 268 (citations omitted).

In the FLSA, Congress set out its findings and purposes as follows:

> (a) The Congress finds that the existence, in industries engaged in commerce or in the production of goods for commerce, of labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers (1) causes commerce and the channels and instrumentalities of commerce to be used to spread and perpetuate such labor conditions among the several States; (2) burdens commerce and the free flow of goods in commerce; (3) constitutes an unfair method of competition in commerce; (4) leads to labor disputes burdening and obstructing commerce and the free flow of goods in commerce; and (5) interferes with the orderly and fair marketing of goods in commerce. . . .
>
> (b) It is declared to be the policy of the [FLSA], through the exercise by Congress of its power to regulate commerce among the several States and with foreign nations, to correct and as rapidly as practicable to eliminate the conditions above referred to in such industries without substantially curtailing employment or earning power.

29 U.S.C. § 202. Such language contains not a hint that Congress intended to invoke its powers under the Fourteenth Amendment. To the contrary, the findings and policy set out in section 202 are exclusively couched in terms of commerce.

The plaintiffs suggest that absence of reference to the Fourteenth Amendment is not necessarily dispositive. They point to a Supreme Court case, *Equal Employment Opportunity Comm'n v. Wyoming*, 460 U.S. 226, 103 S.Ct. 1054, 75 L.Ed.2d 18 (1983), wherein the Court—in a footnote—wrote that Congress need not "anywhere recite the words 'section 5' or 'Fourteenth Amendment' or 'equal protection,' for '[t]he . . . constitutionality of action taken by Congress does not depend on recitals of the power which it undertakes to exercise.'" 460 U.S. at 243 n. 18, 103 S.Ct. at 1064 n. 18 (quoting *Woods v. Cloyd W. Miller Co.*, 333 U.S. 138, 68 S.Ct. 421, 92 L.Ed. 596 (1948)). Before attributing to Congress an unstated intent to act under the Fourteenth Amendment, however, the

court must be able to "discern some legislative purpose or factual predicate that supports the exercise of that power." *EEOC v. Wyoming,* 460 U.S. at 243 n. 18, 103 S.Ct. at 1063 n. 18.

This court has found no case wherein it is suggested, much less held, that the FLSA was passed pursuant to Congress's Fourteenth Amendment powers. Interestingly, a number of courts have concluded that the Fourteenth Amendment did provide an unstated basis for passage of the Equal Pay Act of 1963 ("EPA"), 29 U.S.C. § 206(d), which—for assorted reasons—was enacted as an amendment to the FLSA. *See, e.g. Marshall v. Owensboro–Daviess County Hosp.,* 581 F.2d 116 (6th Cir.1978); *Usery v. Charleston County School Dist.,* 558 F.2d 1169 (4th Cir. 1977). These courts have been careful to note, however, that (1) the EPA was enacted as a separate and severable provision of the FLSA; and (2) unlike the balance of the FLSA, the purpose of which was to improve the hours and wages of those who work on goods in interstate commerce, the EPA was enacted for the distinct purpose of eradicating wage discrimination between the genders, a classic example of class-based differentiation prohibited by the Equal Protection Clause of the Fourteenth Amendment.

The plaintiffs maintain that Congress could have justified its action based on the Fourteenth Amendment because, like the anti-discrimination laws, the FLSA was "necessary to secure equality of protection to employees in the work force generally." Doc. 116 at 18. This court disagrees. The legislative history of the FLSA reveals that, through the FLSA, Congress intended to protect the national health and economy by promoting the free flow of goods in interstate commerce. *See Brooklyn Savings Bank v. O'Neil,* 324 U.S. 697, 65 S.Ct. 895, 89 L.Ed. 1296 (1945) (discussing the legislative history of the FLSA). To accomplish this end, Congress chose to protect certain groups of employees—namely the unprotected, unorganized, and lowest paid of those engaged in interstate commerce or in the production of goods for interstate commerce—from the low wages and excessive hours that were, according to Congress, detrimental to the national health and well-being. Congress clearly expressed its intent to enact the wage and overtime provisions of the FLSA under the Commerce Clause, and this court has been unable to discern any legislative purpose that would support exercise of congressional power under the Fourteenth Amendment.

Because the Commerce Clause provides Congress with no authority to abrogate a state's Eleventh Amendment immunity, it is ORDERED:

1. FDOC's motion to dismiss for lack of jurisdiction (doc. 100) is GRANTED.

2. The clerk shall enter judgment accordingly.