Jimmy N. MORRIS

v.

The UNITED STATES.

No. 500–77.

United States Court of Claims.

March 21, 1979.

Jimmy N. Morris, pro se.

Arlene Fine, Washington, D. C., with whom was Asst. Atty. Gen. Barbara Allen Babcock, Washington, D. C., for defendant; Thomas V. Tung, of counsel.

Before DAVIS, KASHIWA and KUNZIG, Judges.

## ON CROSS MOTIONS FOR SUMMARY JUDGMENT

KUNZIG, Judge:

This *pro se* civilian pay case, presenting the question of whether personal expenses incurred by plaintiff incident to an unwarranted or unjustified personnel action are compensable under the Back Pay Act, 5 U.S.C. § 5596 (1976), is before the court on the parties' cross motions for summary judgment. Although we find plaintiff's actions to have been eminently reasonable and, in fact, resulting in a substantial savings of money to the Government, we are constrained to hold that the Back Pay Act and implementing regulations do not provide for reimbursement of plaintiff's claimed expenditures. We therefore hold in favor of the Government.

The Government has also asserted a counterclaim against plaintiff for the total amount of certain relocation costs he was advanced. Because we are unable to ascertain from the present state of the record what portion of such monies plaintiff should retain, we remand that segment of the case to our Trial Division for further proceedings. Upon submission by plaintiff of appropriate vouchers, the proper amount can be computed in accordance with Rule 131(c)(2).

Plaintiff was employed as a GS–13 Equal Employment Coordinator in the San Francisco Operations Office (SAN) of the Department of Energy (DOE).[1] His saga began on May 22, 1974, when he was given notice of an impending reduction-in-force (RIF). The RIF involved the abolishment of all positions in plaintiff's competitive level effective July 6, 1974. On June 28, 1974, plaintiff was offered a GS–11 position (Security Inspector) with the Security Division of SAN in Los Angeles, California. He voluntarily accepted this new position, in lieu of separation, by letter dated June 5, 1974. Morris, however, in accepting the GS–11 position, specifically reserved his appeal rights in regard to the RIF.

On July 26, 1974, an authorization for permanent change of duty station for plaintiff was issued by SAN. The authorization provided for travel funds to cover expenses in connection with the relocation of Morris and his family to Los Angeles, as well as expenses for the transportation and temporary storage of his household goods and personal effects and for expenses relating to the sale of his house and purchase of a new house. At such time, plaintiff was advanced $3,800 for such expenses.

In the early part of August 1974, Morris and his family traveled to Los Angeles. Shortly, thereafter, plaintiff decided not to relocate his family to Los Angeles, and they returned to their home in the San Francisco area. Plaintiff remained and reported to his new job in Los Angeles on August 26, 1974 and commuted back and forth to his home in San Francisco each weekend until August 1, 1975.

During this time, plaintiff diligently pursued his appeal rights *vis a vis* the RIF action. Such efforts ultimately met with

---

1. The Department of Energy combined two former agencies: Most of the Atomic Energy Commission (AEC) and the Energy Research and Development Administration (ERDA).

*success* when Dr. Robert C. Seamans, Jr., Administrator of ERDA sustained plaintiff's objections to the RIF and by letter dated September 19, 1975, directed the following remedial action:

Accordingly, in these circumstances, I am hereby directing cancellation of the RIF action against you. By this same decision, I am also directing SAN to place you in the next GG–13 [sic] position for which you are qualified. Such action shall be taken as quickly as possible, but not later than six months from the date of this letter. I am also directing that SAN review your pay situation to assure that you are whole in accordance with ERDA Manual 4170–56.[2]

As a result, Morris was reassigned to a GS–13 position with duty station in Oakland, California effective February 15, 1976. Plaintiff's troubles, however, had just begun.

On March 15, 1976, Morris submitted a claim to Donald E. Reardon, Deputy Manager, ERDA, for reimbursement in the amount of $8,333.72 for his expenses incurred while he was stationed in Los Angeles. The claim was for travel (weekends) from Los Angeles to San Francisco during the period August 9, 1974 to August 1, 1975, and for per diem during this period. The per diem claim was based on the belief that since his duty station in Los Angeles had been cancelled, his assignment was therefore temporary and entitled him to claim per diem during such time.

Reardon denied the entire claim on June 21, 1976 on the basis that "there [was] no precedent or legal authority under the Back Pay Act (5 U.S.C. § 5596) or per diem regulations" for reimbursement of the claimed expenses. Plaintiff, however, was further advised that the expenses involved in his move from Los Angeles and his return to the San Francisco area were allowable in accordance with ERDA regulations for transfers of duty station and that "a proper settlement [would] be made when you [plaintiff] submit the appropriate vouchers."

The Comptroller General of the United States, by decision dated August 16, 1977, affirmed the agency decision to deny plaintiff's claimed expenses. Plaintiff then timely filed suit in this court.

■ Plaintiff contends that under the Back Pay Act, 5 U.S.C. § 5596 (1976) and its implementing regulations, his claimed expenses (commuting and per diem) are reimbursable. His position, simply stated, is that the expenses he incurred were the direct result of the RIF action that was subsequently determined to have been unwarranted. Since the purpose of the statute (when one has been subjected to an improper personnel action) is to make an employee financially "whole," plaintiff argues, his claimed expenses are compensable in order that the intent of the statute be carried out.

Defendant responds that the Back Pay Act only entitles an employee who has been subjected to an improper personnel action "to receive for the period which the [improper] personnel action was in effect an amount equal to all or any part of the pay, allowances, or differentials as applicable, that the employee would have earned . . . ." Since plaintiff's claim is for expenses, not for pay, allowances or differentials he would have earned, defendant argues the claim should be denied. Moreover, the Back Pay Act does not provide compensation for personal expenses that an employee may incur incident to an improper personnel action.

As a final salvo, defendant counter-claims against the plaintiff for the $3,800 advanced to him for his relocation costs to Los Angeles. Such money was advanced to plaintiff on the condition he submit appropriate expense vouchers. Pertinent regulations require that where an advance exceeds the reimbursable amount (determined on the basis of vouchers submitted), the employee shall refund the excess funds.

---

2. ERDA Manual 4170–56 tracks the provisions of the Back Pay Act and implementing regulations as discussed *infra.*

Defendant contends no such vouchers were submitted by plaintiff and thus the Government is entitled to the total amount advanced.

Plaintiff replies to this charge that he did, in fact, submit the appropriate vouchers in accordance with procedures in effect at such time.

Our resolution of this case must begin with an analysis of the Back Pay Act, 5 U.S.C. § 5596 (1976), which states that an employee who has been subjected to an improper personnel action:

    *     *     *     *     *     *

(1) is entitled, on correction of the personnel action, to receive for the period for which the personnel action was in effect an amount equal to all or any part of the pay, allowances, or differentials, as applicable, that the employee normally would have earned during that period if the personnel action had not occurred, less any amounts earned by him through other employment during that period; . .

The obvious intent of the statute, clear on its face, is to restore to employees who have been subjected to improper adverse personnel actions, "the amount of pay, allowances, differentials and leave" the employee would have earned if the unjustified or unwarranted personnel action had not occurred.

Plaintiff's claim is for per diem while in Los Angeles and for commuting expenses between there and San Francisco. It is clear, however, that the terms of the statute do not contemplate reimbursement for expenses of the character claimed by Morris. "Per diem" and "commuting expenses" are not included in the terms allowances and differentials that are reimbursable under the Back Pay Act. The statute authorizes only payment of an amount which the employee "normally would have earned" if the erroneous personnel action had not occurred.

Thus, although plaintiff's expenses may be a consequence of his erroneous transfer, they are not allowances that he would have received had he not undergone the improper personnel action. Absent this crucial factor, we are compelled, reluctantly, to hold that plaintiff's claimed expenses are not reimbursable under the statute. A similar conclusion is reached in analyzing the statute's implementing regulations. The amount of back pay an employee is entitled to, as stated in 5 C.F.R. § 550.804(b)(7)[3] includes:

(7) Any other changes which would affect the amount of pay, allowances, differentials, or leave which the employee would have earned had it not been for the unjustified or unwarranted personnel action.

The regulation is clear that "changes" must affect or be incident to an employee's pay, allowances, differentials or leave in order to be compensable. Mere expenses, related to an improper personnel action are not within the ambit of the regulation.

"Expenses," such as claimed by plaintiff, are simply nowhere to be found in the applicable statutory or regulatory provisions and in the absence of express authority to award such items, they cannot be imputed. *Rasmussen v. United States*, 543 F.2d 134, 211 Ct.Cl. 260 (1976); *Van Winkle v. McLucas*, 537 F.2d 246 (6th Cir. 1976), *cert. denied*, 429 U.S. 1093, 97 S.Ct. 1105, 51 L.Ed.2d 539 (1977).

Understandably, plaintiff argues Dr. Seamans said he was to be made "whole," but "whole" means "in accordance with ERDA Manual 4170–56," which, along with the Back Pay Act, speaks only in terms of pay.

The irony of this case is that if plaintiff had decided to relocate his family to Los Angeles and hence obviated the need to commute back and forth to San Francisco, he would have cost the Government, by his estimate, some $35,000. Defendant, while making no concession as to the specific amount due, admits he would have been

---

**3.** 5 C.F.R. § 550.804(b)(7) has been deleted in the revised regulations found in 5 C.F.R. § 550.804 (1977).

fully reimbursed. Plaintiff's present claim, for $8,333.72, represents a substantial savings to the Government, but as discussed *supra*, is not compensable under the Back Pay Act and attendant regulations. We are therefore faced with the unpleasant situation where an employee of the Government who has acted in a manner, all too rare in these times, to save the Government money, is, in effect, penalized for such actions. The hard fact remains, though, that his actions are not compensable. We believe that plaintiff's case is fairly unique and we have sympathy for his cause. In the main, the back pay statute and attendant regulations work well, though not perfectly. Unfortunately, in the instant case, they dictate the result we have reached today. Under these circumstances, we believe it particularly appropriate to call the situation to the attention of Congress for the possible introduction of a private bill to remedy plaintiff's plight.

It remains to discuss the Government's counter-claim for the $3,800 advanced to plaintiff for his relocation costs. Defendant contends that plaintiff never submitted expense vouchers as required by Federal Personnel Manual 101–7, para. 1–10.3 and AEC Appendix 1501, Part II, para. 5. Plaintiff says he did. Under these circumstances, summary judgment is inappropriate where there is a dispute as to a material fact. *General Dynamics Corp. v. United States*, 558 F.2d 985, 994, 214 Ct.Cl. 607, 623 (1977).[4]

We therefore remand this portion of the case to our Trial Division in accordance with Rule 131(c)(2), to determine on the basis of plaintiff's expense vouchers the amount of the advance he is entitled to retain.

Accordingly, we hold upon careful consideration of all the parties' submissions, with oral argument, that plaintiff's motion for summary judgment is denied. Defendant's cross-motion for summary judgment is granted, and defendant's counter-claim is

remanded to our Trial Division for further proceedings in accordance with Rule 131(c)(2).

---

**4.** It may well be, given the unusual circumstances of this case, that some or almost all of plaintiff's travel costs would be specially compensable from relocation funds, were appropriate explanatory vouchers filed.