SOCIAL SECURITY ADMINISTRATION, BALTIMORE, MARYLAND, Petitioner,

v.

FEDERAL LABOR RELATIONS AUTHORITY, Respondent.

American Federation of Government Employees, AFL–CIO, Intervenor.

No. 99–1157.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 22, 1999.

Decided Jan. 18, 2000.

Anne Murphy, Attorney, U.S. Department of Justice, argued the cause for petitioner. With her on the briefs were David W. Ogden, Acting Assistant Attorney General, and Alfred Mollin, Senior Counsel.

Ann M. Boehm, Attorney, Federal Labor Relations Authority, argued the cause for respondent. With her on the brief were David M. Smith, Solicitor, and William R. Tobey, Deputy Solicitor.

Before: WILLIAMS, SENTELLE and RANDOLPH, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge:

The Social Security Administration (SSA) petitions for review of an unfair labor practice order of the Federal Labor Relations Authority (FLRA) requiring the SSA to pay post-judgment interest on liquidated damages awarded through arbitration under the Fair Labor Standards Act (FLSA). *See Social Sec. Admin. Baltimore, Md. and American Fed'n of Gov't Employees, AFL–CIO,* 55 F.L.R.A. 246 (1999). In its order, the FLRA interpreted the Back Pay Act as requiring the SSA to pay such interest. Because we find that the Back Pay Act does not authorize the FLRA to require an agency to pay interest on liquidated damages, we reverse the FLRA's order.

## I. Background

The present controversy arises from the implementation of awards in two earlier arbitration proceedings before arbitrators Henry L. Segal and M. David Vaughn. In those arbitration proceedings, a total of 7,500 SSA employees successfully contended that they had been misclassified and consequently denied payment for overtime work to which they would otherwise have been entitled. *See American Fed'n of Gov't Employees, AFL–CIO and Social Sec. Admin.,* No. BW–89–R–0044, Grievance GC–UMG–88–01 and FO–UMG–87–10 (1993) (Segal, Arb.) and (1995) (Vaughn, Arb.). Pursuant to the FLSA, the arbitrators awarded the employees six years' back pay plus interest or liquidated damages equal to the underlying back pay amount, whichever would yield the greatest award on the date of payment as determined individually for each employee. In other words, the only employees to receive liquidated damages would be those for whom accrued interest would not double their award. The *Segal* award, applicable

to 6,000 employees, became final in August of 1993. The *Vaughn* award, which gives rise to the unfair labor practice order which is the subject of the present petition, became final in February of 1995.

The SSA did not begin payments on the *Segal* award until after August 1995; and the SSA postponed payment of the *Vaughn* award until the FLRA reached a decision in another case, *Social Sec. Admin. Baltimore, Md. and American Fed'n of Gov't Employees, AFL–CIO,* 53 F.L.R.A. 1053 (1997), although the SSA made some payments under *Vaughn* in March 1996. In May 1995 and October 1995 respectively, the American Federation of Government Employees, AFL–CIO (the Union) filed unfair labor practice charges against the SSA for failure to comply with the *Segal* and *Vaughn* awards. The Union and the SSA settled all aspects of their dispute except the Union's claim that the SSA should pay post-judgment interest on liquidated damages. The Union and the SSA submitted to the FLRA for resolution the question of "whether interest on liquidated damages is legally required." *Social Sec. Admin. Baltimore, Md.,* 55 F.L.R.A. at 248.

The FLRA ruled that the record in *Segal* was insufficient to determine whether the SSA had unreasonably delayed compliance with the award; but with respect to the *Vaughn* award, the SSA conceded its failure to comply timely. The FLRA, relying on the Back Pay Act, 5 U.S.C. § 5596(b)(1)-(2) (1994), ordered the SSA to pay interest on the entire award, inclusive of liquidated damages, "commencing from the date the award became final and binding." *Social Sec. Admin. Baltimore, Md.,* 55 F.L.R.A. at 251. The FLRA recognized that the Back Pay Act waived sovereign immunity from claims for interest on claims of an aggrieved employee " 'affected by an unjustified or unwarranted personnel action' " that " 'resulted in the withdrawal or reduction ... of the pay, allowances, or differentials of the employee[.]' " *See id.* at 250 (quoting 5 U.S.C.

§ 5596(b)(1)). The FLRA concluded that the SSA's failure to comply timely with the *Vaughn* award satisfied these requirements. The SSA appeals from that conclusion.

## II. Analysis

The issue before us is the same as that presented to the FLRA: whether the Back Pay Act requires interest on liquidated damages. Historically, sovereign immunity has shielded agencies of the federal government from interest claims. *See, e.g., Library of Congress v. Shaw,* 478 U.S. 310, 314–17, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986); *Amax Land Co. v. Quarterman,* 181 F.3d 1356, 1359–60 (D.C.Cir.1999). Even where Congress has waived immunity to suit, a litigant against the government cannot recover interest unless Congress affirmatively, separately, and unambiguously contemplated an award of interest. *See Shaw,* 478 U.S. at 315, 106 S.Ct. 2957. Congress has enacted various statutes waiving the government's immunity from interest claims, however. *See Shaw,* 478 U.S. at 318 n. 6, 106 S.Ct. 2957 (listing several examples of congressional waivers of sovereign immunity from interest claims). We construe the scope of any statute waiving sovereign immunity strictly in the government's favor. *See id.* at 318, 106 S.Ct. 2957; *Brown v. Secretary of the Army,* 78 F.3d 645, 649 (D.C.Cir.1996). The FLRA maintains that, even under this high standard, the Back Pay Act authorizes it to require interest in this case.

We have recognized the Back Pay Act as a congressional waiver of sovereign immunity from interest claims on awards arising under other statutes, such as the FLSA. *See Brown v. Secretary of the Army,* 918 F.2d 214, 216–18 (D.C.Cir. 1990). *Accord Edwards v. Lujan,* 40 F.3d 1152, 1154 (10th Cir.1994) (adopting *Brown*); *Woolf v. Bowles,* 57 F.3d 407, 410 (4th Cir.1995) (same). Like any other waiver of sovereign immunity, however, the Back Pay Act's allowance of interest against the government is effective only as to awards that come within the scope of the statute. The Act provides recovery to any government employee who

> ha[s] been affected by an unjustified or unwarranted personnel action which has resulted in the *withdrawal or reduction* of all or part of the *pay, allowances, or differentials* of the employee ... is entitled ... to receive ... an amount equal to all or any part of the pay, allowances, or differentials, as applicable which the employee normally would have earned or received during the period if the personnel action had not occurred....

5 U.S.C. § 5596(b)(1) (emphasis added). Amounts awarded under this provision "shall be payable with interest." 5 U.S.C. § 5596(b)(2)(A). Thus, the Act does include a waiver of sovereign immunity as to interest on awards under the Act. But to meet the standard under the Act for an award to bear interest: 1) the employee must have been affected by an unjustified or unwarranted personnel action; 2) the employee must have suffered a withdrawal or reduction of all or part of his pay, allowances, or differentials; and 3) but for the action, the employee would not have experienced the withdrawal or reduction. The parties before us disagree as to whether the SSA's failure to pay the *Vaughn* award timely represents "a withdrawal or reduction of pay, allowances, or differentials" under 5 U.S.C. § 5596(b)(1), as defined by 5 C.F.R. § 550.803 (1999).

### A. Pay, Allowances, or Differentials

The Social Security Administration contends, and we agree, that liquidated damages do not constitute "pay, allowances, or differentials." The Back Pay Act does not define the term pay, allowances, or differentials, although its use in the same provision as the phrase "which the employee normally would have earned or received" offers some guidance. Since 1981, the Office of Personnel Management (OPM) regulations have defined pay, allowances, or differentials collectively as "monetary and employment benefits to

which an employee is entitled by statute or regulation by virtue of the performance of a Federal function" rather than as separate terms. 5 C.F.R. § 550.803. The SSA argues that we should interpret pay, allowances, or differentials narrowly as encompassing only payments or benefits in the nature of compensation which an employee would normally receive for performing his federal job. The FLRA maintains that the OPM's regulation adopts a much broader reading of pay, allowances, or differentials which includes anything to which an employee is entitled that is in any way connected with his federal employment, including the liquidated damages award before us, which arose out of a dispute originally connected with the claimants' employment.

While there is no case directly on point, existing precedent supports the SSA's position. The Tenth Circuit and the Court of Claims have both interpreted pay, allowances, or differentials consistent with its statutory context as including only those amounts and benefits that the employee normally would have earned as part of his regular compensation during the period in question if the adverse personnel action had not occurred. *See Hurley v. United States,* 624 F.2d 93, 94–95 (10th Cir.1980); *Morris v. United States,* 219 Ct.Cl. 452, 595 F.2d 591, 594 (Ct.Cl.1979). *Hurley* and *Morris* involved claims for reimbursement of per diem and commuting expenditures incurred as a result of improper reassignments of military personnel to different geographical locations. Since the employees would not have incurred the expenses in the first place had the erroneous reassignments never occurred, the reimbursements would not have been part of the claimants' compensation absent that unwarranted personnel action. Therefore, the courts held that such reimbursements were not within the scope of pay, allowances, or differentials under the Back Pay Act.

The award at issue before us involves not salary, allowances, or employment ben-

efits but liquidated damages. Again, there is no controlling authority directly on point, but the Supreme Court has considered the nature of liquidated damages in an interest award controversy, though not under the Back Pay Act. In *Brooklyn Savings Bank v. O'Neil,* 324 U.S. 697, 65 S.Ct. 895, 89 L.Ed. 1296 (1945), the Supreme Court considered the claim of an employee in the private sector who had obtained a recovery under the FLSA. The FLSA specifically provided that in addition to a recovery of unpaid minimum wages or overtime compensation, a prevailing employee-claimant was entitled to "an additional equal amount as liquidated damages." *Id.* at 699, 65 S.Ct. 895 (quoting Fair Labor Standards Act of 1938, 52 Stat. 1060, at 1069). The Supreme Court held that an employee could not recover interest on liquidated damages awarded under that statute. The Court noted that, in the FLSA, Congress provided for liquidated damages because it recognized that the employer's failure to pay the full compensation owed without delay deprives the aggrieved employee of the use of those funds and may impair his ability to support himself. *See id.* at 707, 65 S.Ct. 895. By authorizing liquidated damages, Congress sought to compensate the aggrieved employee for the employer's delay and to restore him to a position as if the employer had not failed in its obligation to pay in a timely manner that compensation to which he was entitled. *See id.* The Court also recognized that interest likewise represents compensation for damages resulting from a delay in payment, and that permitting an employee to recover interest on liquidated damages would "produce the undesirable result of allowing interest on interest." *Id.* at 715, 65 S.Ct. 895.

In the case before us the liquidated damages clearly represent an alternative to interest as compensation for the government's delay in paying overtime, as opposed to some sort of remuneration for work performed, given that the *Vaughn* arbitrator ordered the greater of accrued

interest or liquidated damages to be added to each employee's individual overtime back pay award. The SSA employees covered by the *Vaughn* award certainly would not have been entitled to either interest or liquidated damages as part of their regular compensation. Following the reasoning of *Hurley* and *Morris,* and the implication of *Brooklyn Savings,* liquidated damages are not pay, allowances, or differentials.

The FLRA challenges the continued validity of *Hurley* and *Morris,* as they predate the OPM's present regulatory definition. But the *Hurley* and *Morris* courts based their conclusions on the plain meaning of the statute, not the then existing OPM regulation. Further, the OPM in promulgating the current regulatory definition did not purport to alter the results of those decisions. *See* 46 Fed.Reg. 58,-271, 58,272–73 (1981). In the commentary accompanying the regulation's publication, the OPM recognized as examples of employment benefits "coverage under the Civil Service Retirement System and benefits received under the Federal employee health benefits and group life insurance programs *prior to retirement.*" *Id.* at 58,-272. The OPM also stated that benefits received after retirement were not encompassed by its definition of pay, allowances, or differentials, despite the connection of such benefits to federal employment. *See id.* In short, the OPM's comments support a narrower construction of its regulation that is more consistent with the analysis of *Hurley* and *Morris* and the SSA's interpretation than with the FLRA's approach.

Moreover, despite its position here, the FLRA itself has cited *Hurley* and *Morris,* even after the OPM promulgated its current regulation, for the continuing proposition that per diem and commuting expenses are not reimbursable under the Back Pay Act. *See Department of Defense Dependents Sch. and Overseas Fed'n of Teachers,* 54 F.L.R.A. 259, 266–67 (1998). Also, in *United States Dep't of Health and Human Services and National Treasury Employees Union,* 54 F.L.R.A. 1210 (1998), the FLRA applied the reasoning of *Hurley* and *Morris* in concluding that transit subsidies fell within the scope of pay, allowances, or differentials as "normal legitimate employee benefits in the nature of employment compensation or emoluments," rather than nonreimbursible per diem. *See id.* at 1221–23 (citing *Department of Defense Dependents Schools).* In both of these proceedings, the FLRA quoted the current definition of pay, allowances, or differentials from 5 C.F.R. § 550.803, then endeavored at length to demonstrate why the payments in question were in the nature of the employees' regular compensation as opposed to amounts that the employees would not have received had the erroneous personnel action not occurred. Thus, the FLRA's own precedents support the reading of pay, allowances, or differentials advanced by the SSA, not the expansive interpretation adopted by the FLRA.

Nevertheless, before us the FLRA characterizes the OPM's regulation as adopting a broad reading of the Back Pay Act, covering anything to which an employee is entitled in connection with his federal employment. Relying heavily on the word "received" from 5 U.S.C. § 5596(b)(1)(A)(i), together with the word "entitled" and the phrase "by virtue of the performance of a Federal function" from the OPM's regulation, the FLRA maintains that because the employees were entitled to receive the liquidated damages for reasons related to the performance of their jobs with the federal government, the plain meaning of the Back Pay Act and the regulation supports the imposition of interest on those liquidated damages. The FLRA's construction takes these words and phrases out of context, however, as if they have significance independent of the full sentences of which they are part.

It is a "fundamental principle of statutory construction (and, indeed, of language itself) that the meaning of a word cannot be determined in isolation, but must be

drawn from the context in which it is used." *Deal v. United States,* 508 U.S. 129, 132, 113 S.Ct. 1993, 124 L.Ed.2d 44 (1993) (citations omitted). The Back Pay Act authorizes interest only on amounts representing "the *pay, allowances, or differentials,* as applicable which the employee[s] *normally* would have earned or received...." 5 U.S.C. § 5596(b)(1)(A)(i) (emphasis added). Contrary to the FLRA's rather circular construction, these words do not authorize interest for all amounts that employees are entitled to receive, nor does the statute's use of the word "received" purport to define what constitutes pay, allowances, or differentials. The adverb "normally" modifying "received" further restricts the pay, allowances, or differentials to which interest may be applied. Likewise, 5 C.F.R. § 550.803 does not define pay, allowances, or differentials as including any amounts to which an employee is entitled, but limits the term to "monetary and employment benefits," then employs the phrase "by virtue of the performance of a Federal function." In short, in construing both the statute and the regulation, the FLRA disregards the subject, the dominant element, of the clause or sentence and relies on limiting words and phrases that broaden the scope of the statute only when taken completely out of context.

■ We do not defer to the FLRA's interpretation of the Back Pay Act, a general statute not committed to the Authority's administration. *See, e.g., Professional Airways Sys. Specialists v. FLRA,* 809 F.2d 855, 857 n. 6 (D.C.Cir.1987). Nor do we defer to the FLRA's interpretation of a regulation promulgated by another agency, *see United States Dep't of the Air Force v. FLRA,* 952 F.2d 446, 450 (D.C.Cir.1991), even if the OPM's regulation itself is entitled to deference under *Chevron U.S.A. Inc. v. NRDC,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). We review this purely legal question *de novo* and conclude that, whether or not the OPM intended a broad reading of the statute,

the FLRA's interpretation of the regulation stretches the OPM's arguably less restrictive phraseology to the broadest possible reading. So far does the FLRA distort it that the regulation no longer comports with the statute it interprets. "A regulation which ... operates to create a rule out of harmony with the statute, is a mere nullity." *Manhattan Gen. Equip. Co. v. Commissioner of Internal Revenue,* 297 U.S. 129, 134, 56 S.Ct. 397, 80 L.Ed. 528 (1936). In contrast, interpreting the regulatory definition as including only payments in the nature of compensation, such as literal "back pay" or regular employment benefits, is not only consistent with the reasoning of *Hurley* and *Morris,* and with the OPM's own commentary, but also with the plain meaning of the statute.

■ In summary, the phrase "pay, allowances, or differentials" includes only payments and benefits of the sort that an employee normally earns or receives as part the regular compensation for performing his job. The statutory language, the OPM regulation, and judicial and administrative precedent, as well as the command that we construe waivers of sovereign immunity narrowly, all mandate this measured interpretation of pay, allowances, and differentials. Liquidated damages are not within the scope of this construction. Accordingly, we hold that liquidated damages are not pay, allowances, or differentials within the context of the Back Pay Act.

### B. Withdrawal or Reduction

■ Our decision that the failure to pay timely the award of liquidated damages does not give rise to recoverable interest against a government agency rests not only on our conclusion that liquidated damages do not constitute "pay, allowances, or differentials" within the meaning of the statutory waiver of sovereign immunity, but also that the failure timely to pay those damages does not constitute a "withdrawal or reduction" of compensation as contemplated in the statute. As the Su-

preme Court recognized in *United States v. Testan*, 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976), not every failure to deliver to an individual employed by the government a sum of money to which he is entitled constitutes a withdrawal or reduction of such pay, allowances, or differentials. *Testan* addressed a claim for back pay by two government employees who sued successfully for reclassification to a higher grade. The Court rejected a broadening interpretation of withdrawal or reduction in the Back Pay Act, holding:

> The statute's language was intended to provide a monetary remedy for wrongful reductions in grade, removals, suspensions, and other unwarranted or unjustified actions affecting pay or allowances [that] could occur in the course of reassignments and change from full-time to part-time work....
>
> .    .    .    .    .
>
> ... [T]he Back Pay Act, as its words so clearly indicate, was intended to grant a monetary cause of action *only to those who were subjected to a reduction in their duly appointed emoluments or position.*

*Id.* at 405–07, 96 S.Ct. 948 (internal quotation omitted) (emphasis added). Thus, because the employees in *Testan* had been paid the appropriate amount for the grade to which they were appointed, and had not experienced a *reduction in pay* or a *decrease in grade*, the Court held that they had not suffered a withdrawal or reduction of their pay, allowances, or differentials as required for recovery under the Back Pay Act, even though they rightly should have been classified at the higher grade from the beginning. *Id.* at 407, 96 S.Ct. 948; *see also Brown*, 918 F.2d at 218 (recognizing as the holding in *Testan* "that Back Pay Act relief is available only to compensate for a reduction in pay or a decrease in grade").

As a general matter, the SSA's failure to pay this one-time equitable remedy as quickly as it might hardly deprived the recipient employees of any identifiable benefit. Under the *Vaughn* remedy for the SSA's misclassification, interest continued to accrue through the final date of payment. The only employees receiving liquidated damages were those for whom the amount of such damages continued to exceed the interest to which the employees otherwise would have been entitled after that accrual. Thus, the liquidated damages accomplished the job for which they were intended—to compensate for the delay in payment. At a minimum, however, the SSA's failure to pay the *Vaughn* award in a timely manner clearly did not reduce the regular pay or benefits the employees were receiving in relation to their ongoing employment, nor did it reduce their grade, as *Testan* requires. Therefore, regardless of whether liquidated damages fall within the scope of pay, allowances, and differentials, according to the Supreme Court's instruction in *Testan*, the SSA's inaction in this case does not represent a withdrawal or reduction under the Back Pay Act.

The FLRA erroneously suggests that *Testan* is inapplicable since the present case involves an unfair labor practice as opposed to a reclassification action. Nothing in the *Testan* opinion or the relevant Back Pay Act provisions suggests that classification errors and unfair labor practices should be treated differently. In fact, 5 U.S.C. § 5596(b)(1) expressly includes unfair labor practices but does not distinguish them from other unjustified or unwarranted personnel actions. The fact upon which the FLRA seeks to distinguish *Testan* is not determinative of the present inquiry. Thus, *Testan* controls, and we conclude that the FLRA's conceded failure to comply with the *Vaughn* award does not constitute a withdrawal or reduction within the context of the Back Pay Act.

### Conclusion

In summary, the Back Pay Act would only waive sovereign immunity against interest on the liquidated damages portion of the *Vaughn* award if the SSA's delay in

remitting those payments represented a withdrawal or reduction of the employees' pay, allowances, or differentials. The liquidated damages are not "pay, allowances, or differentials" and the FLRA's failure to pay them in a timely manner is not a "withdrawal or reduction." Accordingly, we hold that the Back Pay Act does not authorize the FLRA to require an agency to pay interest on liquidated damages awarded under the Fair Labor Standards Act. The FLRA's order to the contrary is reversed. The petition for review is granted.