Salinger, Kenneth W., J.
The parties agree that under their written employment agreement Hallmark Health Medical Associates, Inc: (“HHMA”) owes Alla Feygina, M.D., an additional $255,755.82 in compensation for calendar year 2010. The undisputed facts establish that HHMA never made an unconditional tender of any part of the additional compensation that it owes Dr. Feygina, and thus has breached its legal obligation to pay this amount. Feygina is entitled to summary judgment in her favor as a matter of law on her claims for breach of contract and violation of the Massachusetts Wage Act, G.L.c. 149, §§148 & 150. HHMA owes Feygina $255,755.82 as direct damages for breach of contract and an additional $57,057 in consequential damages because HHMA’s delay in tendering payment caused Feygina to incur a substantially higher federal income tax liability. Under the Wage Act, Feygina is entitled to collect liquidated damages equal to three times her unpaid wages, or a total of $767,267.46, plus reasonable attorneys fees and costs.
The Court concludes, however, that—unlike treble damages provisions in other statutes—the liquidated damages now mandated by the Wage Act are compensatory, not punitive, in nature. They will in fact fully compensate Feygina for all harm caused by HHMA’s violation of its obligations to pay Feygina. Thus, Feygina is not entitled to recover both treble damages under the Wage Act and additional amounts as compensation for her increased income tax liability or as prejudgment interest to compensate for the loss of use of the wages owed to her by HHMA. That would be duplicative and give Feygina an unfair windfall.
Finally, the Court concludes that Defendants’ motions to compel further discovery, its request that no decision be made on the cross motions for summary judgment until that additional discovery is completed, *280 and its motion to strike portions of Dr. Feygina’s affidavit are all without merit.
1. Undisputed Material Facts
Some of Defendants’ responses in the joint statement of facts purport to dispute alleged facts without reference to any admissible evidence. The Court deems those facts to be undisputed for purpose of evaluating the motion for summary judgment. Cf. Dziamba v. Warner & Stackpole, 56Mass.App.Ct. 397, 401 (2002). A statement of material facts served under Superior Court Rule 9A(b}(5) is an offer of proof, not merely a request for admissions. The responding party must do more than assert that a statement is “disputed.” It must also point to admissible evidence that contradicts the statement. “[M]ere assertions of the existence of disputed facts without evidentiary support cannot defeat [a] summary judgment motion.” Bergendahl v. Massachusetts Elec. Co., 45Mass.App.Ct. 715, 718-19 (1998), cert, denied, 528 U.S. 929 (1999).
The following are undisputed facts or reasonable inferences drawn from those facts. In evaluating the cross motions for summary judgment, the Court “must . . . draw all reasonable inferences” from the evidence presented “in favor of the nonmoving parly,” as a jury or judicial fact finder would be free to do at trial. Godfrey u. Globe Newspaper Co., Inc., 457 Mass. 113, 119 (2010). It has done so.
Feygina was employed by HHMA as a physician from 1998 to December 31, 2010. HHMA operates physician practices and employs physicians like Feygina and other staff to see and care for patients. HHMA is not a hospital. Prior to November 6, 2009, HHMA was known as Ell Pond Medical Associates, Inc.
Feygina and HHMA entered into a written employment contract for calendar year 2010. Although the contract was not signed by HHMA until September 2010, it took effect on January 1, 2010, and provided that Feygina would b e employed by HHMA for one year, i.e. through December 31, 2010. HHMA promised to pay Feygina a “base salary” at the rate $175,000 per year for the period beginning January 1, 2010, a higher base salary at the rate $200,000 per year beginning October 1, 2010, and additional “incentive compensation” equal to “100% of excess revenue over expenses in a calendar year if [Feygina’s] practice breaks even or has a surplus.” For the purpose of calculating whether Feygina’s practice had a surplus, and therefore whether Feygina was entitled to receive incentive compensation on top of her base salary, revenue was defined as “physician collections, including patient service revenue and HMO withhold returns.” Thus, for this purpose the revenues of Feygina’s practice included incentive payments that were withheld by managed care organizations and paid later if certain cost or quality benchmarks were met. Feygina had specially negotiated this incentive compensation provision; other HHMA physicians were not compensated on this basis. HHMA had similarly agreed to pay Feygina incentive compensation in and for prior years. HHMA’s past practice, for the years 2003 through 2009, was to pay Feygina the full amount of incentive compensation she was owed by April 30 of the following year, after HHMA was able to calculate the expenses and collect all revenues of Feygina’s practice for the prior calendar year.
Although Feygina was paid the full amount of base salary that she was owed for 2010, she has never been paid the incentive compensation owed to her by HHMA for 2010. The amount of Feygina’s incentive compensation for 2010 could not be calculated until 2011, when HHMA knew the full amount of the expenses and revenues of Feygina’s practice for 2010. By early 2011, HHMA was able to calculate the expenses allocable to Feygina’s practice for 2010.
On August 10, 2011, HHMA calculated that it owed Feygina $ 167,399.00 in incentive compensation based on revenues for 2010 that HHMA said had been received by that date.
On September 23, 2011, HHMA sent Feygina a pay check in the amount of $111,870.61, which represents a gross payment of $167,399.00 less deductions for taxes and other withholdings. HHMA seemed to indicate that this tender was subj ect to the condition that Feygina accept the proffered payment as a full accord and satisfaction of any and all incentive compensation that HHMA owed her for 2010. The cover letter from HHMA’s general counsel stated in the first paragraph that this check was being sent to Feygina “as full and final payment of Hallmark Health’s contractual obligation to Dr. Feygina.” In addition, the stub attached to the check itself said “FULL AND FINAL PAYMENT.” On the other hand, the cover letter stated on the second page that “[a]ny future payments paid on behalf of Dr. Feygina for dates of service following the termination of Dr. Feygina’s employment will be paid directly to her,” and that HHMA “has accounted for all managed care incentives, to date, and will direct any future payments directly to Dr. Feygina.”
Five days later, on September 28, 2011, Feygina’s attorney wrote to HHMA’s counsel seeking clarification as to whether HHMA intended to make the payment it had tendered to Feygina subject to the condition that she accept it as full and final payment of all amounts owed to her. Feygina said that she would accept the check as a partial payment of what HHMA owed her in incentive compensation for 2010, but that she would not accept the check as a full and final payment because Feygina contended that it did not include all amounts that she was or would be owed as incentive compensation for 2010, and she was unwilling to waive her claim for all compensation owed by HHMA under the parties’ employment agreement.
HHMA never responded to this inquiry,[1] and never agreed that Feygina could deposit the tendered check without accepting it as a full and final payment. On December 8, 2011, Feygina’s attorney sent HHMA another letter again stating that Feygina wished to deposit *281 this check, since it was undisputed that HHMA owed her at least $167,399 in incentive compensation for 2010, but that Feygina would not accept the check if it was subject to the condition that it was a full and final payment of all amounts still owed to Feygina. Once again, HHMA did not respond. Feygina made the same inquiry in a third letter sent by her counsel on September 10, 2012. For a third time HHMA did not respond.
HHMA never told Feygina that it was agreeing that she could deposit that tendered check as payment of $167,399 without having that action deemed to constitute acceptance of the condition that the payment constitute a full and final accord and satisfaction of all amounts still owed to Feygina by HHMA.
Feygina’s expectation that she was owed additional incentive compensation, above and beyond the $167,399 thatithad calculated as of August 10, 2011, proved to be correct. After that date HHMA acknowledged receiving additional managed care payments for the work done by Feygina’s practice during 2010. These additional managed care payments totaled $88,356.82. HHMA never tendered any part of that amount to Feygina. Nor. did HHMA reveal that it had received these additional payments, and thus owed this additional sum to Feygina, until HHMA was questioned at a Rule 30(b)(6) deposition in January 2013.
In sum, HHMA still owes Feygina a total of $255,755.82 in incentive compensation for 2010.[2]
HHMA’s delay in paying this sum to Feygina will cost her at least $57,057 in higher federal income taxes. If HHMA had paid Feygina this amount in 2011, as it was obligated to do under the employment contract it had with Feygina, then Feygina’s federal income tax liability would have increased by $89,514.00. But federal income tax rates increased materially as of Januaiy 1, 2013. As a result, if HHMA were to pay Feygina this amount now her federal income tax liability will increase by $146,571.00.
2. Contract Claims Against HHMA
a. Direct Damages—HHMA’s Failure to Tender Payment
It is now undisputed that HHMA has a contractual obligation to pay Dr. Feygina $255,755.82 in incentive compensation for 2010 and that it has not yet done so.[3] It is also undisputed that HHMA never made any attempt to tender payment of the final $88,356.82 that it owes Feygina.
HHMA’s contention that it complied with its contractual obligations with respect to the remaining $167,399 that it owes Feygina, by tendering payment of that amount less required deductions in September 2011, is without merit. As a matter of law, the tender of partial payment subject to the condition that it be accepted as a “full and final payment”—as HHMA did both in its cover letter and on the stub attached to the check that it sent to Feygina—is not an effective tender. To constitute a tender of payment, an offer must be made “without stipulations or conditions.” Davis v. Allstate Ins. Co., 434Mass. 174,185(2001). An offer that is conditioned upon the release of other claims is an offer of settlement, not a tender of payment of monies owed. Id. Thus, “[a] person who receives a check with what is in substance a release of disputed claims written on it,” or with a cover letter indicating that the check is offered subject to the condition that by cashing it the payee will be agreeing to release disputed claims, “has not . . . received a tender of payment.” Goes v. Feldman, 8 Mass.App.Ct. 84, 92 (1979).
By telling Feygina that the check was offered as “full and final payment” of all sums owed to her, HHMA expressly imposed the condition that Feygina would release all claims to any further payment if she were to deposit the check in a bank account. Bud McDevitt Real Estate, Inc. v. Corona, 27 Mass.App.Ct. 1129, 1130 (1989) (rescript). Thus, Feygina was well within her rights to tell HHMA that she was not prepared to waive her claims for further payment and thus would only accept the check if it retracted its statements that the check was sent as a full and final payment. Feygina’s counsel correctly understood that, under Massachusetts law, “the acceptance and collection of a check, proffered upon condition that it is in full settlement of an unliqui-dated claim, even though accompanied by protestations that it is not so received, bars any attempt to collect the balance!.]” Worcester Color Co. v. Henry Wood’s Sons Co., 209 Mass. 105, 109 (1911); accord Wong v. Paisner, 14 Mass.App.Ct. 923, 924 (1982) (rescript).
The fact that HHMA’s September 2011 cover letter contained some statements suggesting that it did not actually mean what it said by “full and final payment” does not create any disputed issue of material fact as to whether HHMA made an unconditional tender. The contents of HHMA’s letter are undisputed. The Court concludes that, as a matter of law, the imposition of a condition that a check be accepted as “full and final payment” together with conflicting statements that HHMA would nonetheless pay any other amounts it owed to Feygina was not an unconditional tender of payment. This conclusion is bolstered by the facts that Feygina promptly and repeatedly sought clarification as to whether HHMA was prepared to tender payment that was not subject to any condition that Feygina waive her further claims, and that HHMA failed to respond to these inquiries.
b. Consequential Damages— Increased Tax Obligations
Where one party to a bilateral contract breaches its contractual obligations, the other parly is entitled to recover all reasonably foreseeable consequential damages caused by the breach. See Pierce v. Clark, 66 Mass.App.Ct. 912, 814 (2006), and cases cited.
It is undisputed that one consequence of HHMA’s delay in paying Dr. Feygina what she is owed under the parties’ written contract is that Feygina will end up *282 paying $57,057 more in federal income taxes than she would have had to pay if HHMA had tendered payment in a timely manner. Feygina is entitled to recover that amount as consequential damages for breach of contract, as a matter of law. HHMA’s assertion that Feygina could have mitigated this damage by accepting the payment tendered to her is without merit, because—as discussed above—the undisputed facts demonstrate that HHMA never made an unconditional tender of the amounts that it still owes Feygina.
3. Wage Act Claim Against HHMA
a. Whether the Incentive Compensation Was Wages
The incentive compensation promised to Dr. Feygina constitutes “wages” within the meaning of G.L.c. 149, §148. The parties’ written employment agreement provides in article 4.2 that HHMA “agrees to pay [Feygina] compensation” in accord with the compensation plan contained in Attachment A to the contract. That compensation plan provides that Feygina’s compensation was to consist of both base salary and the incentive compensation at issue in this case.
This incentive compensation would be subject to the statute even if it was understood to be a form of commission. By law, commissions are wages subject to the statute once “the amount of such commissions . . . has been definitely determined and has become due and payable to such employee!.]” G.L.c. 149, §148. Feygina’s incentive compensation was structured as additional compensation for success in generating revenues for HHMA, not as a profit sharing arrangement. Unlike the compensation plan at issue in Suominen v. Goodman Industrial Equities Mgmt. Group, LLC, 78 Mass.App.Ct. 723, 737-38, rev. denied, 459 Mass. 1109 (2011), the parties’ employment agreement did not give Feygina any entitlement to any share of HHMA’s profits. Instead, HHMA agreed to pay Feygina incentive compensation that was pegged to the amount of revenue that Feygina’s own practice generated each year. Where an employee is promised both a base salary and additional payments based “on the amount of revenue [s]he generated” for her employer, those additional payments are “commissions” subject to the Wage Act. Okerman v. VA Software Corp., 69 Mass.App.Ct. 771, 772, 776-80 (2007). Furthermore, HHMA could and in fact did definitely determine the total amount of incentive compensation it owed Feygina as soon as HHMA finished collecting all of the revenue generated by Feygina’s practice. Thus, Feygina’s incentive compensation satisfied the requirement that it be “arithmetically determinable.” Id. at 780, quoting Wiedmarm v. Bradford Group, Inc., 444 Mass. 698, 708 (2009).
b. Hospital Exemption
HHMA has conceded that it was Dr. Feygina’s employer and that it is not a hospital. It therefore cannot find refuge in the “hospital” exception to the Wage Act. The Legislature has provided that the Wage Act “shall not apply ... to an employee of an incorporated hospital which provides treatment for patients free of charge, or which is conducted as a public charity, unless such employee requests such hospital to pay him weekly.” G.L.c. 149, §148. But this exception does not apply to all health care providers that operate as nonprofit corporations. Nor does it apply to physician practices that have some affiliation with a hospital. To the contrary, by its plain language this exception only applies to employees of “an incorporated hospital.” HHMA is not an incorporated hospital. Therefore, this exception does not apply to HHMA.
Defendants’ argument that Hallmark Health System, Inc., is a hospital is unavailing. Whether HHMA has some affiliation or corporate relationship with a separate entity that functions as a hospital is beside the point. The statutory exception only applies to employees of certain incorporated hospitals. Dr. Feygina was employed by HHMA, not by Hallmark Health System.
' c. Whether Hallmark Tendered Payment of Base Wages
The Wage Act provides that wages “shall” be paid, a mandatory direction with no qualifications. See G.L .c. 149, §148. HHMA would have satisfied its obligations under the Wage Act if it had made an unconditional tender of all sums that it owed Dr. Feygina. As explained above, however, it never did so. HHMA concedes that it never offered to pay the final $88,356.82 that it owes Feygina. And, as discussed above, HHMA’s offer to pay the other $167,399 that it owes Feygina was made subject to the condition that Feygina accept it as full and final payment, and thereby waive her legitimate claim to the rest of the incentive compensation that HHMA was obligated to pay her. A promise of payment of what the employer acknowledges is owed, conditioned on the release of claims for additional compensation sought by the employee, is not a tender complying with the Act.
d. Liquidated Damages as Compensation for Consequential Damages
Since July 12, 2008, the Wage Act has provided that an employee who prevails in an action under that statute shall be awarded treble damages, reasonable attorneys fees, and litigation costs. See G.L.c. 149, §150, as amended by St. 2008, c. 80, §50. This provision makes an award of treble damages mandatoiy whenever a plaintiff proves that the Act has been violated. Rosnov v. Molley, 460 Mass. 474 (2011). The amendment applies only prospectively. Id at 476-83. Since Hallmark’s violation of the Act occurred after the effective date of the 2008 amendments to §150, Feygina is entitled to treble damages as a matter of law. See id. at 474-75.
As explained below, the Court concludes that the treble damages to which Feygina is entitled under the Wage Act are compensatoiy in nature. For this reason, Feygina is entitled to recover as liquidated damages three times the $255,755.82 of incentive compensation that Hallmark failed to pay her in violation of the Wage Act, or a total of $767,267.46 (plus reasonable attorneys fees and costs). But she is not entitled to *283 recover any amount of consequential damages for increased federal income tax liability in addition to this amount. That would give her an unfair windfall.
In statutes that give trial judges the discretion to award double or treble damages, in addition to single damages that fully compensate the plaintiff, the award of multiple damages is designed to be punitive in nature. See Wiedmann, 444 Mass, at 710 (construing the pre-2008 version of the Massachusetts Wage Act, G.L.c. 149, §150); Goodrow v. Lane Bryant, Inc., 432 Mass. 165, 178 (2000) (construing the Massachusetts overtime compensation statute, G.L.c. 151, §1B); Fon-taine v. Ebtec Corp., 415 Mass. 309, 322 (1993) (construing the Massachusetts antidiscrimination statute, G.L.c. 15 IB); McEvoy Travel Bureau, Inc. v. Norton Co., 408 Mass. 704, 717 (1990) (construing the Massachusetts Consumer Protection Act, G.L.c. 93A).
Here, in contrast, the Legislature’s recent revision to the Massachusetts Wage Act makes clear that the newly-mandatoiy treble damages are compensatory in nature, not punitive. The Legislature amended §150 to specify that an award of mandatory treble damages will constitute “liquidated damages, for any lost wages and other benefits[.]” By providing that liquidated damages for all consequential damages shall equal three times an employee’s unpaid wages, the Legislature has defined liquidated damages based on a simple formula that will produce a calculation of damages based on objective circumstances at the time of the employer’s breach of its obligation to pay wages. Such a formula would likely be a permissible, non-punitive liquidated damages provision in a private contract, and is equally appropriate in a statute aimed at protecting workers. Cf. TAL Financial Corp. v. CSC Consulting, Inc., 446 Mass. 422, 432 (2006) (contract may provide for liquidated damages “at an amount or by a formula that is reasonable in light of the then anticipated harm caused by the default or other act or omission” (quoting G.L.c. 106, §2A-504(1)); Garber’s Auto Rental, Inc. v. Genoa Packing Co., 2 Mass.App.Ct. 298, 303 (1974) (upholding liquidated damages provision in automobile lease that specified formula to “determin[e] a reasonable approximation of actual damages”). Like a liquidated damages provision in a private contract, the award of liquidated damages pursuant to such a statutory provision is compensatory or remedial in nature. Cf. Viera v. Menino, 322 Mass. 165, 168-69 (1947) (holding provision for treble damages for overcharges of rent in Emergency Price Control Act of 1942 was remedial).
The Wage Act previously gave courts the discretion to award treble damages but did not provide that such an award would function “as liquidated damages.” In 2008 the Legislature added the phrase directing that Wage Act treble damages will, going forward, function “as liquidated damages.” St. 2008, c. 80, §50. The addition of this provision makes clear that the mandatory award of treble damages under the revised statute is compensatory, not punitive, in nature. Construing the statute any other way would improperly strip the phrase “as liquidated damages” of any meaning.[4] Where the Legislature has amended astatute to add anewphrase or provision, acourt “cannot read [that] statutory language to be meaningless or superfluous, particularly where the phrase in question has a clear meaning within the statute’s context.” Megiel-Rollo v. Contributory Retirement Appeal Bd., 81 Mass.App.Ct. 317, 322-23 (2012); accord, e.g., Commonwealth v. Palmer, 464 Mass. 773, 779 n.7 (2013) (“It is a cardinal principle of statutory interpretation that ‘[n]one of the words of a statute is to be regarded as superfluous’ ” (quoting Commonwealth v. Woods Hole, Martha’s Vineyard & Nantucket S.S.Auih, 352 Mass. 617, 618 (1967)).[5]
For these reasons, the statutory liquidated damages mandated by G.L.c. 149, §150, are not punitive, but instead “constitute! ] compensation for the retention of a workman’s pay which might result in damages too obscure and difficult of proof for estimate other than by liquidated damages.” Matamoros v. Starbucks Corp., 699 F.3d 129, 140 (1st Cir. 2012) (construing G.L.c. 149, §150),[6] quoting Brooklyn Sav. Bank v. O’Neil, 324 U.S. 697, 707 (1945) (construing federal Fair Labor Standards Act). [7] Other federal courts of appeals have reached the same conclusion in construing similar liquidated damages provisions in federal statutes that protect workers against unfair practices in the payment of wages. See, e.g., Hildebrandt v. Illinois Dept. of Natural Resources, 347 F.3d 1014, 1031 (7th Cir. 2003) (construing liquidated damages provision federal Equal Pay Act, 42 U.S.C. §2000e-2(a)(l), to be compensatory and not punitive); Brocudus v. O.K. Indus., Inc., 226 F.3d 937, 943 (8th Cir. 2000) (same); Reich v. Southern New England Telecommunications Corp., 121 F.3d 58, 71 (2d Cir. 1997) (construing liquidated damages provision of the post-1947 FLSA to be compensatory and not punitive); Martin v. Cooper Elec. Supply Co., 940 F.2d 896, 907 (3d Cir. 1991), cert. denied, 503 U.S. 936 (1992) (same); Republic Franklin Ins. Co. v. Albemarle County School Bd., 670 F.3d 563, 568 (4th Cir. 2012) (same); E.E.O.C. v. First Citizens Bank of Billings, 758 F.2d 397, 403 (9th Cir.), cert. denied, 474 U.S. 902 (1985) (same); Snapp v. Unlimited Concepts, Inc., 208 F.3d 928, 934 (11th Cir. 2000), cert. denied, 532 U.S. 975 (2001).
In short, the liquidated damages that Feygina is entitled to recover under the Wage Act fully compensate her for all direct and consequential damages.[8] It would therefore be double counting to award her any further compensation for the increase in federal tax liability caused by HHMA’s violation of the Wage Act. Feygina cannot recover twice for the same consequential damages, merely because she has asserted separate claims for breach of contract and violation of the Wage Act. See, e.g., Szalla v. Locke, 421 Mass. 448, 453 (1995) (“Recovery of duplicative damages under multiple counts of a complaint is not permissible”).
e. Liquidated Damages and Prejudgment Interest
For the same reason, Feygina may not recover both prejudgment interest and treble damages “as liquidated *284 damages.” Since the Wage Act “authorizes the recovery of liquidated damages [in part] as compensation for delay in payment of sums due under the Act” it would be duplicative for Feygina to recover both prejudgment interest and statutory liquidated damages. See Brooklyn Sav. Bank, 324 U.S. at 715-16 (reaching same result in applying federal Fair Labor Standards Act); accord Social Security Admin., Baltimore, Maryland v. Federal Labor Relations Auth., 201 F.3d 465, 469-70 (D.C.Cir. 2000) (reaching same result as to postjudgment interest in applying federal Back Pay Act). Under other statutes, where liquidated damages are punitive in nature, “a recovery of prejudgment interest on compensatory damages and of multiple or liquidated damages is not duplicative” (emphasis added). Fontaine, 415 Mass, at 327. But things are different where, as here, the statutory liquidated damages compensate an employee for all harm caused by her employer’s unlawful delay in paying all wages owed to her.
“The purpose of prejudgment interest under G.L.c. 231, §6B, is ‘to compensate a damaged party for the loss of use or the unlawful detention of money.’ ” McEvoy Travel Bureau, 408 Mass, at 717, quoting Conway v. Electro Switch Corp., 402 Mass. 385, 390 (1988). Where there is a delay between a legal injury and the payment of compensation, the delay causes the plaintiff to incur “additional injury, including the depreciation of his eventual recovery,” and an award of prejudgment interest “compensates the plaintiff for this additional injury.” Smith v. Massachusetts Bay Transp. Auth., 462 Mass. 370, 375 (2012). Thus, prejudgment interest is “an integral component of compensatory damages.” Id. at 376.
But the trebling of damages as liquidated damages serves to compensate Feygina for all of her consequential damages, as explained above. That includes the consequential damage of having the real value of Feygina’s incentive compensation diminish because of HHMA’s unlawftil delay in paying her. Feygina would get an unfair windfall if she recovered both treble damages as liquidated damages and prejudgment interest.
f. Attorneys Fees
Dr. Feygina has asked for leave to file an affidavit in support of her request for reasonable attorneys fees and costs pursuant to G.L.c. 149, §150. In other words, to date Feygina has only sought partial summary judgment against HHMA, on all issues other than the award of attorneys fees and costs under the Wage Act. The Court will address this issue after Feygina has had the opportunity to make such a filing and HHMA has had a reasonable opportunity to respond, on the schedule established in the order below.
4.Defendants’ Rule 56(f) Request and Motions to Compel
HHMA’s attempt to delay resolution of this case pending further discovery is without merit. HHMA expressly admits that it owes but has not yet paid Feygina $255,755.82 in incentive compensation for 2010. Feygina, in turn, has expressly agreed to waive her claims for any additional incentive compensation. Nor are there any other disputed issues of material fact. No additional facts need to be developed to resolve the issues raised in the parties’ cross motions for summary judgment.
HHMA has filed an affidavit in which its counsel asserts that, pursuant to Mass.RCiv.P. 56(f), HHMA should be given leave to obtain supplemental responses to written discovery and to depose Feygina (even though HHMA did not serve a deposition notice until that date by which all depositions had to be completed), and that resolution of the cross motions for summary judgment should be stayed until that additional discovery is completed. But the affidavit fails to identify any “facts essential to justify” HHMA’s summary judgment opposition that are not available to HHMA at present and that likely could be obtained through further discovery, as required by Rule 56(f). HHMA has made no showing that the additional discovery it seeks would be relevant to the dispositive issues raised in the cross motions for summary judgment. Cf. Commonwealthv. Fall River Motor Sales, Inc., 409 Mass. 302, 308 (1991) (“One common reason for the denial of a continuance [under Rule 56(f)] is the irrelevance of further discovery to the issue being adjudicated in summary judgment”). Furthermore, this case was filed on September 27, 2011, and Defendants had ample time to conduct discovery prior to the February 28, 2013 deadline for doing so. The Court therefore denies HHMA’s Rule 56(f) request and its related motions to compel further discovery.
5.Motion to Strike
HHMA’s motion to strike paragraphs 6-9 and 11 of Dr. Feygina’s affidavit is also without merit. Paragraphs 6, 7, and 11 are admissible because they explain Feygina’s state of mind and why she was unwilling to negotiate the $167,399 payment unless and until HHMA withdrew its apparent condition that the check was offered only as full and final payment of all sums owed to Feygina by HHMA. Paragraphs 8 and 9 are admissible because Dr. Feygina has personal knowledge of the basis on which managed care organizations made payments to physicians in a practice. The Court therefore denies this motion.
6.Claims Against Hallmark Health System, Inc.
Feygina sued two defendants, HHMA and Hallmark Health System, Inc. Feygina only moved for summary judgment against HHMA, her former employer.[9] She may be intending to drop her claims against Hallmark Health System, Inc., since it was a party to her employment agreement and does not appear to have any liability to Feygina under the Wage Act. Feygina must either dismiss the claims against Hallmark Health System or file a status report stating how she proposes to resolve the claims against the remaining defendant.
ORDER
(1) Plaintiffs motion for summary judgment against Hallmark Health Medical Associates, Inc. is ALLOWED *285 and the cross motion by both Defendants for summary judgment in their favor is DENIED. Pursuant to Mass.RCiv.P. 56(c), the Court orders that Hallmark Health Medical Associates, Inc., is liable to Plaintiff under G.L.c. 149, §150, for liquidated damages in the amount of $767,267.46, plus reasonable attorneys fees and costs. The Court further orders that this amount will fully compensate Plaintiff for HHMA’s breach of contract, and that Plaintiff is not entitled to recover prejudgment interest in addition to these liquidated damages.
(2) Defendants’ motion to strike paragraphs 56-62 of the consolidated statement of facts, their motion to strike portions of the affidavit of Alla Feygina, M.D., and their three motions to compel Plaintiffs deposition and to compel further answers to written discovery requests are all DENIED.
(3) Plaintiffs request for leave to file an affidavit and supporting documentation to provide evidence in support of her claim for an award of reasonable attorneys fees and costs pursuant to G.L.c. 149, §150, is ALLOWED. Plaintiff shall serve and file her affidavit and supporting documentation no later than Friday, July 26, 2013. Defendants shall file any response or opposition no later than Tuesday, August 13, 2013. If Defendants do not challenge the reasonableness of Plaintiff s request for attorneys fees, they shall so inform the court in writing, by letter, no later than August 13, 2013.
(4) By July 26, 2013, Feygina shall also file either a joint stipulation dismissing all claims against Hallmark Health System, Inc. (“HHS”), file a motion asking the Court to dismiss all claims against HHS, or file a brief status report stating how she proposes to resolve the claims against HHS.
(5) On Tuesday, August 20, 2013, at 2:00 p.m. in Courtroom 740 (the Civil L2 session) the Court shall conduct a hearing on Plaintiffs request for attorneys fees and costs and any other contested pending motion, as well as a status conference regarding the claims still pending against HHS. All parties shall attend. This hearing and status conference shall be cancelled, however, if before that date the parties inform the court that they have reached an agreement as to the amount of attorneys fees and litigation costs reasonably incunred by Plaintiff and as to the resolution of the claims against HHS, and no other contested motion is pending.

HHMA asserted at oral argument that it made some sort of response to this September 2011 letter, but acknowledged that it presented no evidence of any such response in responding to the statement of undisputed material facts. Feygina filed a sworn affidavit from her counsel stating that HHMA never responded to these letters. In response, HHMA asserted that this statement was “disputed,” but did not present any admissible evidence to the contrary. The Court therefore deems this statement to be undisputed for purposes of deciding the cross motions for summary judgment. See Dziamba, 56 Mass.App.Ct. at 401.

Although Feygina had claimed that she is owed an additional $60,000 or so—because HHMA allegedly owed her for unused vacation time and allegedly miscalculated the expenses associated with her practices—Feygina has waived that additional claim in an effort to conclude the case based on HHMA’s concessions that it owes Feygina $255,755.82 in incentive compensation for 2010.

his agreement regarding HHMA’s contractual obligation under its written employment agreement with Feygina moots her related claims for an accounting and under a promissory estoppel theory.

Wiedmann is not to the contrary, because in that case the SJC was considering the version of §150 that was in effect before the Legislature’s 2008 amendment. Cf. Rosnov, 460 Mass. at 478 n.7.

The Appeals Court recently suggested in dictum that all statutory treble damages provisions, including the one established in the revised Wage Act, are inherently punitive. See Weber v. Coast to Coast Medical, Inc., 83 Mass.App.Ct. 478, 483 n.7 (2013). But this footnote does not consider or analyze the significance of the Legislature’s specification that the newly mandatory treble damages are to constitute “liquidated damages.” Since the footnote was not essential to the Appeals Court’s decision, and “passed upon an issue not really presented” in that case, it is obiter dictum and not binding in other cases. See Old Colony Trust Co. v. Commissioner of Corporations and Taxation, 346 Mass. 667, 676 (1964); Crocker v. Justices of the Superior Court, 208 Mass. 162, 173 (1911).

The Court is not bound by the First Circuit’s interpretation of Massachusetts law. Harrison v. Town of Mattapoisett, 78 Mass.App.Ct. 367, 372 n.5 (2010). But it agrees with this portion of the holding in Matamoros.

 The statutory provision at issue in Brooklyn Sav. Bank mandated that employers that violated the FLSA were liable in the amount of the unpaid wages or overtime compensation “and in an additional equal amount as liquidated damages.” Brooklyn Sav. Bank, 324 U.S. at 699, quoting Section 16(b) of the Fair Labor Standards Act of 1938, 52 Stat. 1060, at 1069, 29 U.S.C. §216(b). Congress revised the FLSA in 1947 to provide an employer “with a defense to a mandatory award of liquidated damages when it can show good faith and reasonable grounds for believing that it was not in violation of the FLSA.” See Trans World Airlines v. Thurston, 469 U.S. 111, 128 n.2 (1985).

Neither Goodrow nor Rosnov compel a different result. Goodrow held that G.L.c. 151, § IB, which similarly provides for the award of treble damages “as liquidated damages,” is punitive in nature. Goodrow, 432 Mass, at 178. But in so doing the Supreme Judicial Court never analyzed whether the Legislature’s use of the phrase “liquidated damages” was intended to and did make an award under that statute compensatory rather than punitive, and did not consider whether construing that statute as providing for punitive damages rendered the phrase “as liquidated damages” superfluous. Similarly, although in Rosnov the Court appears to have assumed that the current version of G.L.c. 149, §150, provides for punitive treble damages, it did not decide whether the Legislature’s introduction of the phrase “as liquidated damages” has made the statute damages provision compensatory rather than punitive in nature. Rosnov, 460 Mass, at 478-79.
‘The most that can be said is that the point was in the cases if anyone had seen fit to raise it. Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.” McEvoy Travel Bureau, 408 Mass, at 719 n.12 (1990), quoting Webster v. Fall, 266 U.S. 507, 511 (1925); accord, e.g., Villages Development Co., Inc. v. Secretary of the Executive Office of Environmental Affairs, 410 Mass. 100, 109 n.5 (1991).

Although both defendants filed a cross motion for summary judgment, they did not concede that Hallmark Health System, Inc., has any obligation to pay Dr. Feygina the incentive compensation she is still owed. Instead, it appears that Defendants were attempting to leverage the presence of *286 Hallmark Health System in the case into an argument that HHMA is exempt from the Wage Act because it is affiliated with Hallmark Health System, which claims to be a hospital. That argument is without merit, as explained above.